## Combs *v.* Cole Brothers Circus, Inc. (et al., Appellant).

Argued April 12, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*S. H. Torchia*, Assistant Counsel, with him *Ralph H. Behney*, Counsel, *M. Leon Tolochko*, Legal Assistant

Counsel and *T. McKeen Chidsey,* Attorney General, for appellant.

*Joseph M. Loughran,* for appellee.

OPINION BY FINE, J., July 15, 1949:

In this workmen's compensation case the State Workmen's Insurance Fund appeals from an award of compensation to Ruby Combs, claimant, and her three children because of the death of her husband, Carl Prichard Combs. The referee allowed compensation but the board reversed the referee concluding that the injury causing death did not occur in the course of deceased's employment. The court below reversed the board and entered judgment on its award of compensation.

The sole question before us is whether the deceased was fatally injured in the course of his employment; and that is a question of law, open to review by the courts. "In each instance the question of law is presented as to whether or not the underlying findings of fact are sufficient to bring the case within the statutory definition; but this, however, does not warrant any interference by the courts with those findings, whether they be based on proved facts or inferences therefrom": *Flucker v. Carnegie Steel Co.,* 263 Pa. 113, 106 A. 192; *Coleman v. Fischer,* 164 Pa. Superior Ct. 261, 265, 63 A. 2d 687. "An injury to be compensable does not have to arise out of the employment; it need only occur in the course of it. (citing cases) An employee may be doing something other than the exact work assigned to him, and he may not be strictly at his assigned work, either as to time or place, yet the continuity of the employment is not broken unless such activity is wholly foreign to his employment or constitutes an abandonment thereof": *Conley v. Pittsburgh Coal Co.,* 157 Pa. Superior Ct. 567, 569, 43 A. 2d 605. An employe need not necessarily be engaged in the actual performance

of work at the moment of injury to be entitled to compensation. It is enough if he is occupying himself consistently with his contract of employment in some manner reasonably incidental to his employment. As stated in *Healey v. Hudson Coal Co.,* 130 Pa. Superior Ct. 462, 464, 465, 198 A. 684: "No general formula has been developed which will enable us to determine readily whether an accident off the premises occurred in the course of employment even though the elementary facts are not in dispute. Experience has shown that many cases involving this question must be disposed of on their own peculiar facts and the question is frequently, as it is here, a reasonably close one." The term "course of employment" is defined in an exhaustive opinion in *Palko v. Taylor-McCoy Coal & Coke Co.,* 289 Pa. 401, 404, 137 A. 625, wherein it is stated: "The question for us to determine is whether the deceased was killed in the course of employment or when actually engaged in furthering the business of the employer while off the premises. The Act specifically requires an employee to be actually so engaged if he is injured while off the employer's premises: Maguire v. James Lees & Sons Co., 273 Pa. 85. The term 'course of employment' has a necessary relation to the fact of employment while on the premises and a still closer relation to the fact of employment when an injury occurs off the premises. In the latter case, the employee must be actually engaged in his master's business." Cf. *Cohen v. Central Home Furniture Co.,* 146 Pa. Superior Ct. 499, 502, 23 A. 2d 70.

Deceased was employed by Cole Brothers Circus, Inc., as a "property" or "prop" man, when fatally injured. His duties were related to the erection of some of the circus paraphernalia incident to the performance of the circus, to the erection and change of trapeze and other equipment during the progress of the show, and to the loading and unloading of wagons with such equipment when the circus departed from or arrived at ex-

hibition sites. The wagons when loaded would be towed by tractor under the supervision of a "transportation crew" to the circus train, where another crew, known as the "train crew", would load this equipment on the circus train. Upon arrival at the next town on the exhibition schedule such circus equipment would be detrained by the "train crew" and transported to the exhibition site by a "transportation crew" where "prop" men would unload the property to be erected by them.

On May 29, 1945, at approximately 11:00 p.m., after the circus had completed its evening performance in Greensburg, Westmoreland County, the deceased, together with other "prop" men, loaded their wagons to be transported to the circus train. When the wagons were loaded the deceased completed his assigned work both as to time and place. His work then ended, but his employment required him to board the circus train which was to leave for Johnstown about two and one-half or three hours later. The board found "such transportation was for the benefit of the employer."

There is some evidence that deceased was seen riding on one of the wagons contrary to the rules and regulations of the circus; after that he was next seen by the assistant manager of the circus, Mr. Burkhart, coming out of a tavern about four blocks distant from the circus grounds. Deceased was wobbling from side to side, his speech was incoherent and he was visibly under the influence of intoxicating liquor. Four circus wagons enroute to the circus train were parked in front of the tavern to be prepared for descent of a very steep hill at that point. He and other employes were requested by his superior to secure some wood for "braking" the wagons on the crest of the hill and he complied with that request. At that time deceased was specifically warned to stay off the wagons. Some distance away and about one-half hour later, the deceased was found by a rear wheel of one of the circus wagons; he was

rushed to the hospital and was pronounced dead on admission. As there were no findings either on the alleged intoxication or on any violations of directions and regulations or the causal connection of either to the injury, those matters are not involved in this case.

The board found as additional facts that: "Seventh . . . Combs' duties with defendant ended when he had loaded the props on the wagon. Eighth . . . that Combs assisted Burkhart in picking up wood to 'brake' the wagons, on a crest of a hill, when apparently his duties had ended for the night. Ninth . . . that Combs was to report to the railroad circus train that night for transportation to the next town, that such transportation was for the benefit of the employer." The board affirmed all other findings of fact of the referee which we have heretofore summarized. The board then concluded as a matter of law ". . . that Combs met with an accidental injury, but that the same occurred after working hours, and not during the course of employment."

Although the board found Combs' duties *ended* with the loading of "props" (Fact 7), they found (Fact 8) his duties *apparently ended* later when Combs assisted in "braking" wagons on the crest of a hill, and then (in Fact 9) found, "Combs was [under a duty] to report to the railroad circus train" for departure to the next town, scheduled for the circus. The board wholly disassociated "duty" from the orbit of "course of employment," distinguished those terms, and treated them as dissimilar. "Duty" does not connote merely active work. "Duty" is defined as "action which one's position or station directly requires": 3 Oxford Dict. 731.

The ninth finding is a controlling fact. In considering whether that underlying fact is sufficient to bring the deceased within the definition of the phrase "course of employment" in our Compensation Act, we should liberally construe the statutory definition: *Haddock v. Edgewater Steel Co.,* 263 Pa. 120, 106 A. 196. The in-

tegral nature and peculiar character of deceased's employment required an almost constant and continuing duty to his employer. Although assigned specific tasks on the circus grounds, he was subject to call. He responded to call when asked to assist in "braking" the employer's wagons after completing his actual work. Such services were not rendered as mere gratuities, as where one assists a stranger. Combs was strictly a traveling worker. His movements were directed, if not entirely controlled, by his employer who provided him with transportation, food and lodging. The course of employment of a traveling worker is necessarily broader than that of an ordinary employe and it should be liberally construed to effectuate the purposes of the Compensation Act. The clock-like precision with which a circus must operate delimits volition of the employe's individual activities to a minimal point. In the circus 'sphere of action' employment is, to all intents, continuous and precise, almost disciplined. When the deceased loaded the "props" his active work, or actual performance of work, may have temporarily ceased but the continuity of his employment was not breached. He was reactivated shortly thereafter when he assisted in "braking" the wagons near the tavern where he was last seen before the infliction of his injuries. There he was *directed* by his employer to go to the train, which was a duty normally required of him in furtherance of his employment. If the work of the employe necessitates travel, during such travel the employe is in the course of his employment. The travel to and from the train was a natural and reasonable incident and ingredient of his employment as much within its contemplation as the actual performance of the work itself. In the employe's journeys to and from the train the employer had an immediate and continuing interest. Of course, the employe might remove himself from the course of employment or abandon his employment for any of the

familiar reasons, not involved in this case. Here the employe did not detach himself from the continuity of his employment but pursued, the record disclosing nothing to the contrary, reasonable conduct in the performance of his obligations for the benefit and convenience of his employer in proceeding along the direct route, undeviatingly, to the circus train. The incident necessary to constitute a break in the course of employment must be of pronounced character: *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 139 A. 192.

The employe's presence on the street leading to the train was required by the nature of his employment. Moreover, the agency, a circus wagon, which inflicted the injuries, was under the control of Combs' employer. Applicable to the instant case are the rules and principles enunciated in *Haddock v. Edgewater Steel Co.,* supra, 263 Pa. 120, 106 A. 196; *Cohen v. Central Home Furniture Co.,* 146 Pa. Superior Ct. 499, 23 A. 2d 70; *Haley v. City of Philadelphia,* 107 Pa. Superior Ct. 405, 163 A. 917; and like cases.

We conclude from the record before us that the injuries, which the board found to be accidental, were caused by an agency under the control of the employer in the course of deceased's employment at a place where he was required to be by the nature and duties of his employment, and are compensable. Cf. *Flucker v. Carnegie Steel Co.,* 263 Pa. 113, 106 A. 192, supra.

Judgment affirmed.