Aluminum Company of America, Petitioner v.
Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Evelyn J. Lindsay,
Widow of James W. Lindsay, Respondents.

Argued September 13, 1977, before Judges CRUMLISH, JR., WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Dale C. Perdue*, with him *Ronald H. Katila*, for petitioner.

*Alexander J. Pentecost*, with him *James N. Diefenderfer*, for respondents.

OPINION BY JUDGE CRUMLISH, JR., December 15, 1977:

The Aluminum Company of America (Alcoa) has appealed from the affirmance by the Workmen's Compensation Appeal Board (Board) of a referee's award of benefits to the widow of one of its employees, James W. Lindsay (Decedent). At issue are the referee's conclusion (improperly denominated a finding of fact) that at the time of his death Decedent was in the course of his employment as defined by Section 301(c) of The Pennsylvania Workmen's Compensation Act[1] and the referee's rejection in toto of the testimony of a witness produced by Alcoa. We affirm.

Decedent had been employed by Alcoa as a coordinator of exhibits, whose duties required him to

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. (Act).

travel extensively throughout the country to supervise the assembly and setting up of exhibits at various trade shows. On the evening of Friday, October 20, 1972, Decedent traveled from Pittsburgh to Miami, Florida. He was responsible for a display at the Port Authority Show at the Four Ambassadors Motel in Miami which was to open on Sunday, October 22 at 10 o'clock A.M. It is undisputed that, shortly after his arrival in Miami, Decedent checked into the Silver Sands Motel; that he had dinner with a business friend and the friend's fiance at a nearby restaurant; that he left the restaurant to drive back alone to the Silver Sands at about 11 o'clock P.M.; and that he was murdered sometime between 11 o'clock P.M. on October 20 and Wednesday, October 23, when his body was discovered buried in the sand on the beach near his hotel room.

Section 301(c) of the Act, 77 P.S. §411, states in pertinent part:

(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, . . . and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the further-

ance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . .

Alcoa's position throughout has been that Decedent was not in the course of his employment at the time of his death, because his duties with respect to the exhibit did not commence until Sunday, when assembly on the exhibit floor would actually take place. It also maintained that Decedent was murdered by a third party for reasons that were personal and not job-related, and to that end, produced a witness who purportedly testified to the circumstances surrounding Decedent's death. The referee totally disbelieved this witness and rejected her testimony, stating in his ninth finding of fact, that "in both her direct testimony and cross examination she has admitted to prior inconsistent statements, to fabrications to other law enforcement agencies, and her answers to questions were evasive, noncommittal and sometimes inexplicable."

We approach the questions presented by this case with certain fundamental considerations in mind. First, the determination of whether an employee is in the course of his employment at the time of injury is one of law based upon findings of fact. *Greene v. Marger, Inc.*, 12 Pa. Commonwealth Ct. 423, 317 A.2d 358 (1974). Second, when an employee sets out upon the business of his employer and is later fatally injured, there is a presumption that the employee was engaged in the furtherance of his employer's business at the time of his death. *Wolfingbarger v. Addressograph-Multigraph Corp.*, 188 Pa. Superior Ct. 136, 146 A.2d 309 (1958). Third, the course of employment of a traveling worker is necessarily broader than that of an ordinary employee, and is to be liberally construed to effectuate the purposes of the Act. *Combs v. Cole Brothers Circus, Inc.*, 165 Pa. Superior Ct. 346, 67 A.2d 791 (1949), and fourth, the burden is upon

the employer to prove that an attack upon an employee by a third person was motivated by personal reasons so as to exclude it from the class of injuries made compensable by the Act. *Cleland Simpson Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 566, 332 A.2d 862 (1975); *Scott v. Acme Wire Products, Inc.,* 13 Pa. Commonwealth Ct. 546, 319 A.2d 436 (1974).

In his decision, the referee made the following findings which, if supported by substantial evidence, would be adequate foundation for his conclusion that Decedent was in the course of his employment at the time of his death:

SIXTH: . . . .

(a) That the Decedent, James W. Lindsay, was a coordinator of exhibits for the Aluminum Company of America;

(b) That it was his duty to plan exhibits, to supervise the building of exhibits, to coordinate with a display house to get the display, to build the exhibit, to arrange to have it shipped to a convention site to set up the exhibit at the convention hall or hotel and also to supervise the dismantling of the exhibit.

. . . .

(e) That the Decedent's duties for the Aluminum Company of America required him to be at the Sheraton Hotel in Miami, Florida, on October 21, 1972 to check out the space for the Alcoa exhibit, to see that there were enough electrical outlets for use at the exhibit and to see that the exhibit arrived intact and was erected for the exhibition which was to begin the following day on October 22, 1972.

(f)   That the Aluminum Company of America, the employer of the Decedent, was paying the air transportation, hotel and meal expenses, together with any other necessary expenses incurred by the Decedent in connection with his trip to Florida.

. . . .

(n)   That the Decedent's presence at the Silver Sands Motel on October 20th and 21st was necessary for the performance of his duties as an Exhibit Coordinator for the Aluminum Company of American in setting up and supervising the Aluminum Company of America exhibit at the Port Authority Show at the Sheraton Hotel in Miami, Florida.

Our review of the entire record convinces us that those findings are amply supported by substantial evidence.

Furthermore, it is well settled that the determination of a witness's credibility is within the province of the referee, since it is he alone who has heard the testimony and observed the demeanor of the witness firsthand. *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). Upon reading the testimony which the referee rejected, we are unable to conclude that his rejection of it was capricious or abusive of his discretion. To the contrary, we find ample justification for the characterization of the testimony as "evasive, noncommittal and sometimes inexplicable." Accordingly, Alcoa has failed to rebut the presumption that Decedent was in the scope of his employment when he was killed, having failed to show a deviation from his employment duties. For the same reason, it has failed to meet its burden of showing that Decedent's murder by a third party was for personal reasons so as to

bring Decedent's death within the class of noncompensable injuries. *Scott v. Acme Wire Products, Inc., supra.*

Accordingly, we

ORDER

AND Now, this 15th day of December, 1977, the decision of the Workmen's Compensation Appeal Board awarding compensation to Evelyn J. Lindsay, Widow of James W. Lindsay, deceased, is hereby affirmed. The Aluminum Company of America shall pay to Claimant Evelyn J. Lindsay, Widow of James W. Lindsay, deceased, compensation at a rate of Ninety-four ($94.00) Dollars per week beginning October 23, 1972, and continuing within the provisions of The Pennsylvania Workmen's Compensation Act.

This award shall bear interest on deferred installments at the rate of Ten (10%) per cent per annum.

The Aluminum Company of America is further directed to pay statutory funeral liability.