Jones & Laughlin Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, Nicholas Birch and Commonwealth of Pennsylvania, Respondents.

Argued October 31, 1977, before Judges CRUMLISH, JR. and BLATT, sitting as a panel of two.

*Raymond F. Keisling,* with him *Will & Keisling,* for petitioner.

*Sandra S. Christianson,* Assistant Attorney General, with her *Benjamin L. Costello, Kenneth J. Yablonski,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE CRUMLISH, JR., March 8, 1978:

Jones & Laughlin Steel Corporation (J & L) has appealed from a decision of the Workmen's Compensation Appeal Board (Board) affirming a referee's award of benefits to its employe, Nicholas Birch (Claimant). The issue is whether the record supports the referee's finding of exposure to an occupational disease hazard after June 30, 1973. We hold that it does, and affirm.

Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2), includes within the definition of compensable injury those occupational diseases enumerated in Section 108, 77 P.S. §27.1, when an employe's disability arises in whole or in part from his exposure to the hazard of the occupational disease *after June 30, 1973.* Section 108(q)[1] names coal worker's pneumoconiosis, anthraco-silicosis, and silicosis as occupational diseases.

Claimant was employed in the coal mining industry from 1923 to January 31, 1974, working the last 27 years for Jones & Laughlin. For the first 40 years

---

[1] Section 108(q) was added by the Act of December 6, 1972, P.L. 1627, 77 P.S. §27.1(q).

he worked at various jobs underground in the mines; during the last 11 years, including the seven months subsequent to June 30, 1973, he worked as a dockman, whose duties involved him in the loading of coal into barges.

The referee found that Claimant had been permanently and totally disabled by anthraco-silicosis, and that the disability had resulted in whole or in part from his exposure to the hazard of that occupational disease after June 30, 1973, while he was employed by Jones and Laughlin. J & L attacks the finding of post-June 30, 1973 exposure on the ground that during that period and for approximately 10 years prior thereto, Claimant was employed aboveground as a dockman, and not as an underground miner, and that the only evidence of record on the issue of Claimant's exposure to the hazard subsequent to June 30, 1973 was the statement of J & L's physician, Dr. Anderson, that Claimant's work as a dockman after that date did not contribute to his disability. We disagree with J & L's characterization of the evidence.

In *Workmen's Compensation Appeal Board v. Commonwealth (Klebick)*, 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975), we addressed the issue of the degree of proof necessary to show that disability resulted in whole or in part from exposure to the hazard of an occupational disease subsequent to June 30, 1973. There we held that where a claimant had worked underground in coal mines for 37 years ending July 17, 1973, and the medical evidence indicated that his disability was due to cumulative exposure during that period, the claimant had established his entitlement to benefits, because he had shown that his post-June 30, 1973 exposure, even though lasting only 17 days, was *in part* the cause of his disability. We rejected the Commonwealth's contention that the Act required an exact finding, based on direct medical evidence, of a

causal connection between the post-June 30, 1973 exposure and the claimant's disability; we also held that the claimant there was entitled to the benefit of the presumption created by Section 301(e) of the Act, 77 P.S. §413, which states:

> If it be shown that the employe, at or immediately before the date of disability, was employed in an occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

Our decision in *Klebick* controls this case. Here, Claimant himself testified before the referee that during the 11 years he worked as a dockman, he was exposed to blowing coal dust during the course of his employment. This testimony is sufficient to call into play the presumption of Section 301(e). Since this presumption that Claimant's occupational disease arose out of and in the course of his employment is unrebutted, the only remaining issue is whether he was exposed to the hazard of the disease after June 30, 1973. Claimant was examined by two doctors other than the physician for J & L. His own physician reported simply that Claimant was totally disabled by coal worker's pneumoconiosis. The Commonwealth's physician, Dr. Walker, reported that Claimant was totally disabled by anthraco-silicosis aggravated by chronic emphysema and chronic cor pulmonale which he said occurred "as a result of his total accumulative exposure to dust in the mine of 40 years." J & L argues that, by its own terms, Dr. Walker's diagnosis limited the cause of Claimant's disability to his activities *in the mines,* which lasted 40 years and terminated in 1963. But a reading of the entire report makes it clear that Dr. Walker had in mind the entire

course of Claimant's employment in the coal industry, including his work as a dockman, which the doctor believed involved "very dusty" conditions, but that he erroneously believed that Claimant had worked only 30 years in the mines in addition to the 10 years he had worked on the outside.[2] Dr. Walker's report therefore constitutes substantial evidence of Claimant's cumulative exposure to a silica hazard during the entire 51-year period of his employment in the industry. Hence, there exists sufficient evidentiary foundation for the referee's finding that Claimant's exposure after June 30, 1973 was in part the cause of his disability, *Klebick, supra*. While J & L's physician[3] rendered an opinion contrary to Dr. Walker's, it is well settled that the question of which account was more credible was solely for the referee to decide. *Aluminum Co. of America v. Workmen's Compensation Appeal Board*, 33 Pa. Commonwealth Ct. 33, 380 A.2d 941 (1977).

---

[2] Dr. Walker's report contains the following paragraph:

Occupational History: This applicant has worked in the soft coal fields of western Pennsylvania *for a period of 40 years. During this time, 30 years were inside and 10 years on the outside.* During this time, he did all types of work. He loaded coal by hand for a number of years. He was a timberman, he was a roofbolter, he operated a jackhammer under dry conditions. He laid track. He was a rockduster. He was off and on a motorman and a snapper. He then worked 10 years outside in a preparation plant where the coal was then loaded into the preparation plant *where it was also very dusty.* He has not worked since January 31, 1974 at the age of 66. (Emphasis added.)

[3] Dr. Anderson's testimony was substantially weakened when he stated, under cross-examination, that he did not actually know the level of dust Claimant had been exposed to as a dockman and that, in opining that there was no causal connection between Claimant's post-June 30, 1973 exposure and his disability, he had assumed that the level was insignificant.

Accordingly, we

ORDER

AND Now, this 8th day of March, 1978, the decision of the Workmen's Compensation Appeal Board affirming the referee's award of benefits to Nicholas Birch is hereby affirmed. The Defendants, Jones & Laughlin Steel Corporation and the Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Occupational Injury and Disease Compensation, are ordered and directed to pay compensation to Nicholas Birch, Claimant, at the rate of $106.00 per week, beginning on May 7, 1974.

Of the said weekly amount of $106.00, the Commonwealth of Pennsylvania shall be liable for the payment of seventy-five (75%) percent thereof, or in the amount of $79.50, and the Defendant, Jones & Laughlin Steel Corporation, shall be liable for the payment of twenty-five (25%) percent, or in the amount of $26.50 per week.

The above award against the Defendant-Company only shall bear interest on all deferred payments of compensation at the rate of ten (10%) percent per annum.