Lewis E. Steele, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Borough of Midland, Respondents.

Argued February 3, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Edwin H. Beachler,* with him *McArdle, Henderson, Caroselli, Spagnolli & Beachler,* for appellant.

*Elmer G. Klaber,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., June 28, 1978:
Lewis E. Steele (Claimant) has appealed the de-

cision of the Workmen's Compensation Appeal Board (Board) reversing the referee's award of benefits under Section 306(c) of The Pennsylvania Workmen's Compensation Act.[1] The sole issue is whether Claimant has suffered the loss of use of his left eye for all practical intents and purposes, as the result of his admittedly job-related accident. We hold that he did, and reverse.

Claimant had been employed by the Borough of Midland (Borough) as a driver of street cleaning equipment. On June 14, 1973, he was hammering on a piece of equipment with a hammer and chisel, when a sliver of steel from one of the implements struck his left eye, penetrating the eyeball. The next day Claimant underwent surgery for removal of the piece of metal; several days later, following the development of a traumatic cateract as a result of the penetration of the foreign body, surgery was again performed to remove the cateract, and with it the lens of Claimant's left eye.

Claimant received two and six-sevenths weeks compensation, signed a final settlement receipt, and returned to work on July 11, 1973. The case went before the referee on Claimant's petition to set aside the final receipt.

The referee heard testimony from Claimant, from Claimant's medical witness, an opthalmologist, and from the Borough's medical witness, the opthalmologist who performed the surgery on Claimant's eye.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §513(7). That section provides, in pertinent part:

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

. . . .

(7) For the loss of an eye, sixty-six and two-thirds per centum of wages during two hundred seventy-five weeks.

There is no dispute about the following facts. Prior to the accident, Claimant's left eye was affected with amblyopia, or "lazy eye" and had a central visual acuity of 20/400, correctable to 20/200. Following the accident and surgery, Claimant could see only light and hazy, undefined forms out of the left eye, and his vision was further impaired by the presence of a large "floater" which he described as a dark slit which floats around the visual field. He had no central vision in that eye and the only contribution that the eye made to his sight was that it gave him peripheral vision which enabled him to see the shadowy forms of objects coming from his left side and thereby afforded him some added protection. Furthermore, he has 20/20 vision in his right eye and has clear vision when using that eye alone; but when using his two eyes together, he experiences haziness, floaters, and double vision. Claimant has no effective binocular vision.

The Borough's physician testified that, due to Claimant's amblyopia, he had been essentially a one-eyed individual all his life, but that what little visual acuity he had had in his left eye prior to the injury could be restored by the use of a contact lens. For that reason and because the eye performed the important function of providing some left peripheral vision, he stated that in his opinion, Claimant had not suffered a loss of use of the eye for all practical intents and purposes.

Claimant's physician stated that prior to June 14, 1973, Claimant had not lost the practical use of the left eye, but that, as a result of the accident, he *had* suffered a loss of use of the eye for all practical intents and purposes. The referee accepted this opinion and awarded benefits.

On appeal, the Board remanded the case for the referee to make specific findings as to the role the injured eye plays in Claimant's vision when used in con-

junction with the uninjured eye. In so doing, the Board relied on our opinion in *Hershey Estates v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 470, 308 A.2d 637 (1973), wherein we reviewed the case law and enunciated the following test:

> The standard to be applied in the determination of whether compensation for the specific loss of the use of an eye is due, where the eye has been injured but not entirely destroyed, has been the subject of numerous and lengthy opinions. . . . The ultimate test finally arrived at, after much travail, is that of whether the injured eye was lost for all practical intents and purposes, not whether claimant in fact has vision in the injured eye. In facilitation of the application of the ultimate test, a further standard has been adopted: Compensation may not be had if, using both eyes, the claimant can see *better, in general,* than by using the uninjured eye alone . . .; or, as otherwise stated, there may be compensation if the use of the injured eye does not *contribute materially* to the claimant's vision in conjunction with the use of the normal eye. . . . (Emphasis added.) (Citations omitted.)

9 Pa. Commonwealth Ct. at 473, 308 A.2d at 639.

The referee took no additional testimony, but made the following additional finding:

> 11(a) The claimant when utilizing his uninjured or right eye alone has clear vision devoid of haziness, floaters or double vision; however, when utilizing his injured or left eye in conjunction with his right eye, the claimant's vision encounters haziness, floaters, and double vision.

11(b) Accordingly your Referee finds that although the claimant realized some material benefit when utilizing his injured left eye in conjunction with his uninjured right eye as opposed to utilizing his right eye alone, said benefits consist of the ability to see unidentifiable objects coming from his left side as a dark shadow in a light background and the only contribution involves a safety factor. In comparison of the use of both eyes in conjunction as compared to the use of the right eye alone, the use of both eyes is adverse to the claimant due to the haziness, floaters, and double vision incurred.

On appeal, the Board, relying upon the referee's use of the words "some material benefit" in the first sentence of Finding No. 11(b), reversed the referee, holding that Claimant had not brought his injury within the standard of *Hershey Estates.* This was error.

Initially, we note that, as the Board recognized in its opinion, the condition of Claimant's injured eye must be analyzed without reference to the possible beneficial effect of a contact lens. In *Stachowski v. Incorporated Real Estate Investors,* 174 Pa. Superior Ct. 152, 100 A.2d 140 (1953), the Court stated:

The fact that by means of a correcting lens an otherwise sightless eye, for practical purposes, may be restored to the equivalent of normal function, is no longer decisive to the right of compensation under §306(c) solely on the ground that it is 'an eye in reserve.' The issue here is whether Claimant has better vision using the injured eye (without the correcting lens) along with the [uninjured] eye than he would have with the uninjured eye alone.

174 Pa. Superior Ct. at 156, 100 A.2d at 142.

Thus, the Borough's physician's statements as to improvements which would result from Claimant's wear-

ing a contact lens are not properly a part of our consideration.[2]

The record and the referee's findings make clear that this claimant's left eye is, at best, a mixed blessing to him. It gives him some benefit, in that it brings to him an image from the left periphery of his environment which, in the words of the Borough's physician, is "useful information" which "prevents him from running into objects from that side and being hit by objects from that side." Yet, there is no question that the image received from his left eye detracts from the normal, clear image received from the right eye; in other words, that the overall visual picture is very much impaired by the use of the injured eye in combination with the uninjured one. While we said in *Hershey Estates, supra,* that compensation may be had if the injured eye "does not contribute materially" to Claimant's vision in conjunction with the uninjured eye, we intended "material contribution" to mean a net gain or benefit, taking into consideration all of the good and bad effects that use of the injured eye has on the Claimant's total vision. Thus, we stated that there can be no compensation "if, using both eyes, the claimant can see *better, in general,* than by using the uninjured eye alone." (Emphasis added.) This is precisely

---

[2] Even were this not the case, there is substantial disagreement between the two physicians with respect to Claimant's ability to wear a contact lens. Claimant's physician testified that because Claimant's eye is now irregularly shaped due to the laceration of the cornea and subsequent scarring, he probably would not be able to wear a contact lens. The Borough's physician stated that his failure to wear a lens resulted, not from any physical inability, but rather from Claimant's lack of motivation to overcome the initial discomfort, since all he had to gain was the attaining of the vision which he had before the accident, which, in that physician's opinion, was not significantly better than the vision he has now. The question of credibility thus raised was exclusively for the referee to resolve.

the analysis engaged in by the referee in arriving at his conclusion, in the last sentence of Finding No. 11 (b), that, although there was some material benefit from the left eye, that benefit was outweighed by the negative factors of haziness, floaters and double vision with which the left eye's image confused the otherwise normal image of the right eye, and that therefore, "compared to the use of the right eye alone, the use of both eyes is *adverse to* the claimant." (Emphasis added.) The evidence clearly supports this finding.

Furthermore, any disagreement between the two physicians as to the extent of Claimant's visual acuity before the accident and, therefore, whether his present disability resulted from the accident, presented a question of credibility, the resolution of which was exclusively within the province of the referee, *Aluminum Co. of America v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 33, 380 A.2d 941 (1977); *Cole Steel Equipment Corp. v. Workmen's Compensation Appeal Board,* 14 Pa. Commonwealth Ct. 454, 322 A.2d 743 (1974). The Board lacked authority to substitute its judgment as to credibility for that of the referee and reverse his finding of causation without taking additional testimony. *Commercial Laundry, Inc. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 297, 331 A.2d 230 (1975). Therefore, we will reverse the Board's decision and reinstate the referee's award of benefits to Claimant. However, we must return the case to the Board for determination of one narrow issue. Claimant's attorneys had appealed to the Board the award of counsel fees by the referee, alleging that he had improperly failed to base the award on a power of attorney and contingent fee agreement between Claimant and his attorneys. Since the Board held that Claimant was not entitled to benefits, it did not reach the

question of counsel fees. We, therefore, remand the case for resolution of that issue only.

Accordingly, we

ORDER

AND Now, this 28th day of June, 1978, the decision of the Workmen's Compensation Appeal Board is reversed. Judgment is entered in favor of Claimant, Lewis E. Steele, and against the defendant, Borough of Midland and its insurance carrier, Potomac Insurance Company, in the amount of $27,500.00, being compensation at a rate of $100.00 per week for 275 weeks, together with interest at a rate of ten percent (10%) per annum on all deferred payments, in accordance with the provisions of Section 406.1 of The Pennsylvania Workmen's Compensation Act. All disability payments resulting from the June 14, 1973 injury shall cease and terminate on October 18, 1978. The case is remanded to the Board for a determination of attorneys' fees only.