Westinghouse Electric Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Margaret L. Pollard, Widow of Walter H. Pollard, deceased, Respondents.

Argued March 9, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*William Alvah Stewart, III,* with him *Mark A. Willard,* and *Eckert, Seamans, Cherin & Mellott,* for petitioner.

*Samuel J. Goldstein,* for respondents.

OPINION BY JUDGE ROGERS, April 20, 1979:

This is the appeal of the Westinghouse Electric Corporation (Westinghouse) from an order of the Workmen's Compensation Appeal Board affirming a referee's award of benefits to the widow of Walter H. Pollard, a Westinghouse employee. We affirm.

Mr. Pollard was employed by Westinghouse as an internal consultant, a position which required him to travel from his home in Pittsburgh to Westinghouse facilities throughout the country. On October 7, 1974, Mr. Pollard and another Westinghouse employee named Shea were to travel together to a Westinghouse facility at Hampton, South Carolina on a project which it was believed would take about a week. Mr. Pollard missed his flight from Pittsburgh but caught a later one the same day and joined Shea in Hampton late in the afternoon of October 7. They toured the Hampton plant and were then taken to Micarta Lodge, living accommodations provided by Westinghouse for visiting employees and customers. It was not required that

Pollard and Shea stay at Micarta Lodge and there were public accommodations available, but at some 18 miles from the plant. They arrived at Micarta Lodge at about 6:30 P.M. Mr. Pollard consumed a drink from a bottle of whiskey supplied from a locked cabinet by Westinghouse's local manager who had accompanied them to the Lodge. Mr. Pollard also called his wife on the telephone and told her he would be home on Thursday, October 10, 1974, a day earlier than he had been scheduled to return. Mr. Pollard then went out to dinner with Shea and three other Westinghouse employees. He drank a whiskey at dinner. The conversation was on social not business matters. The group returned to Micarta Lodge at 9:00 P.M. None of his companions observed anything unusual about Mr. Pollard's behavior at this time. Mr. Pollard then had more drinks in the lounge of the Lodge. By about 9:45 P.M. he appeared to the other persons present to be intoxicated. Two of the men were required to assist him to his bedroom. As the other men were leaving the bedroom, Mr. Pollard asked Shea what time Shea wanted him to arise the next morning. Shea said that he would call him at 7:00 o'clock A.M. Mr. Pollard was found dead the next morning on the floor of his bedroom.

Upon order of the coroner of Hampton County, South Carolina, two physicians performed an autopsy. One of them made a preliminary cause of death report recording that the immediate cause of Mr. Pollard's death was asphyxia due to the aspiration of gastric contents in turn due to acute ethanol intoxication. On a place provided on the form for reporting whether the death was by accident, suicide, homicide, or undetermined, the doctor reported "Accident". After a laboratory report of toxicological examination and urine drug screen was made, reporting a high level of ethanol in Mr. Pollard's system and overdoses of three

depressant drugs, the two doctors who made the autopsy reported as follows:

It is, therefore, the opinion of the prosecutors on the basis of the history as stated in this protocol, as well as the autopsy findings that the decedent came to his demise as a result of asphyxiation secondary to aspiration of gastric contents which resulted from central nervous system depression due to intoxication with ethanol and a combination of tranquilizers. It is further our opinion that the manner of death is best classified as accidental.

The claimant, Mr. Pollard's widow, filed a claim petition for workmen's compensation benefits. After nine hearings the referee made the following findings of fact:

SEVENTEENTH: Your referee further finds that taking into consideration the decedent's blood alcohol level of .322 or higher, and impairment of his intellectual reasoning, sensory perception, and motor coordination, he would not have been able to form a conscious, deliberate, intellectually reasoned intent to commit suicide and did not take his own life, especially in view of his medical history, his conduct, his family relationship, and his solid economic posture.

EIGHTEENTH: Your referee finds from competent, credible medical testimony that the decedent was unqualifiedly under the influence of alcohol and that his mental processes in terms of intellectual reasoning, sensory perception, and motor coordination were severly impaired and compromised ruling out the possibility or probability of suicide, especially in the absence of any other evidence to indicate suicide.

NINETEENTH: On the basis of the unequivocal, competent, and credible lay and medical testimony together with the exhibits, it is the considered judgment and finding of your referee that the decedent came to a compensable accidental death.

The referee concluded:

FIRST: On October 7, 1974, the decedent, Walter H. Pollard, III, died during the course of his employment on premises of the employer due to asphyxia caused by the aspiration of gastric contents into the respiratory tract produced by vomiting following the ingestion of ethanol and drugs and medications which severely depressed his Central Nervous System setting in motion the events which caused death, compensable under the terms and provisions of the Workmen's Compensation Act as amended and the judicial interpretations thereof.

Westinghouse first argues that Mr. Pollard's death did not arise in the course of his employment, as is, of course, required by §301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411. In considering this argument, we must keep in mind that Mr. Pollard's position was one requiring visits to Westinghouse facilities in places other than Pittsburgh where he lived, that he was in Hampton, South Carolina on just such a business visit, that he had visited the Westinghouse facility in the late afternoon of October 7, 1974, that he was scheduled to resume his work the next morning and that he died in Westinghouse housing accommodations near the plant. In *Aluminum Company of America v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 33, 380 A.2d 941 (1977), where the employee also died of other than

natural causes while on his employer's business in a distant city, Judge CRUMLISH, JR. wrote:

We approach the questions presented by this case with certain fundamental considerations in mind. First, the determination of whether an employee is in the course of his employment at the time of injury is one of law based upon findings of fact. Greene v. Marger, Inc., 12 Pa. Commonwealth Ct. 423, 317 A.2d 358 (1974). Second, when an employee sets out upon the business of his employer and is later fatally injured, there is a presumption that the employee was engaged in the furtherance of his employer's business at the time of his death. Wolfingbarger v. Addressograph-Multigraph Corp., 188 Pa. Superior Ct. 136, 146 A.2d 309 (1958). Third, the course of employment of a traveling worker is necessarily broader than that of an ordinary employee, and is to be liberally construed to effectuate the purposes of the Act. Combs v. Cole Brothers Circus, Inc., 165 Pa. Superior Ct. 346, 67 A.2d 791 (1949). . . .

33 Pa. Commonwealth Ct. at 36, 380 A.2d at 943.

In the case just referred to, the employee had traveled to Miami, Florida on a Friday to see to the erection of a display at a trade show scheduled to open on Sunday, had checked into his motel, had gone to dinner with friends at a nearby restaurant and had left the restaurant at about 11:00 o'clock P.M. Sometime between that time and the following Wednesday he was murdered and his body buried in the sand on the beach near this motel. We affirmed an award.

In *Maher v. Hallmark Cards, Inc.*, 207 Pa. Superior Ct. 472, 218 A.2d 593 (1976), the employee, a salesman whose territory was in Philadelphia, helped two other employees set up a greeting card display in Downingtown, Pennsylvania. They finished work at about 7:45

P.M. and went to a nearby hotel where the employee drank beer and engaged in conversation with his fellow salesmen. At about midnight the employee left his friends. An hour later he was killed on the public highway in Downington when his automobile crossed into the opposite lane of traffic into the path of a truck. The Superior Court in affirming an award to Maher's widow, after noting that the decedent's employment was primarily off-premises, emphasized the following settled principles:

> The phrase 'course of employment' is to receive a liberal construction, and the evidence must be viewed in the light most favorable to the claimant who has the Board's decision: Hesselman v. Somerset Community Hospital, 203 Pa. Superior Ct. 313, 201 A.2d 302. An employe need not necessarily be engaged in the actual performance of work at the moment of injury: Keim v. Burkholder, 182 Pa. Superior Ct. 460, 127 A.2d 752. It is enough if he is occupying himself consistently with his contract of employment in a manner reasonably incidental thereto: Combs v. Cole Bros. Circus, 165 Pa. Superior Ct. 346, 67 A.2d 791.
>
> . . . .
>
> The course of employment of an outside salesman is necessarily broader than that of an on the premises employee: Wolfingbarger v. Addressograph-Multigraph Corp., 188 Pa. Superior Ct. 136, 146 A.2d 309. In that case, we made the following pertinent statement: 'Where an employe starts out on the business of his employer and is later fatally injured, a presumption is raised that he was engaged in the furtherance of his employer's business at the time of the accident and a slight deviation will not take the employe out of the course of his em-

ployment . . . The incident necessary to constitute a break in the course of the employment must be of a pronounced character.' The line between a disqualifying deviation and one so slight as not to disqualify a claimant is a matter of judgment for the compensation authorities: French v. Coff Decorators, 199 Pa. Superior Ct. 482, 185 A.2d 646.

207 Pa. Superior Ct. at 476, 477-78, 218 A.2d at 595-96. The Superior Court held that the employer's contention that Maher was either not in the course of his employment at the time of his death or that he had substantially deviated from it after his work was completed, were without merit.

We believe that the facts of the instant case, which notably do not include any evidence as to when or in what circumstances Mr. Pollard obtained or ingested the drugs and medications found in his body, demonstrate a stronger case for compensability than those of either of the two cases just cited. Mr. Pollard died in his bedroom after working the day before and intending to work the next day in circumstances which the coroner's medical examiners after a thorough review of all of the facts concluded demonstrated an accidental death. We agree with the Appeal Board that Mr. Pollard's activities on the evening just before his death were not so inconsistent with the purpose of his business trip to South Carolina as to constitute an abandonment of his employment or such a deviation therefrom as to cause us to say that he was no longer in the course of his employment. In this connection we recall that his last remark to his companion, Mr. Shea, was to ask when they should arise in the morning to go back to work.

Westinghouse also contends that the referee should have inferred from all of the facts that Mr. Pollard committed suicide. Of course this argument runs head-

long into the referee's finding that the death was accidental—a fact which we find to be supported by substantial competent evidence. Dr. Cyril Wecht testified for the claimant that by reason of the high level of alcohol in his blood Mr. Pollard "would not have been able to form a conscious, deliberate, intellectually reasoned intent to commit suicide." As he says in his findings, the referee also considered Mr. Pollard's stable life circumstances. Where facts permit an inference of either accidental death or suicide the inference to be adopted is for the compensation authorities and a finding of accidental death will be reversed only if the facts inevitably lead to a conclusion of suicide. *Hunter v. American Oil Co.,* 136 Pa. Superior Ct. 563, 7 A.2d 479 (1939).

Westinghouse's remaining argument is erected upon an assertion that the referee should not have found that Mr. Pollard died on Westinghouse's premises. It says that although Mr. Pollard may have died on Westinghouse's property he did not die on its premises as that term is applied in workmen's compensation cases. The argument is difficult to follow because the award in this case was not sought or granted on the ground that Mr. Pollard was killed as the result of the condition of his employer's premises or of the employer's operations thereon, to which situation the cases on which Westinghouse relies are relevant. Mr. Pollard's death is compensable because while in South Carolina on a business trip he was actually engaged in his employer's business, just as the employees in *Aluminum Co. of America v. Workmen's Compensation Appeal Board, supra,* and *Maher v. Hallmark Cards, Inc., supra,* were determined to be engaged in their employers' business although they met their deaths, respectively, in or near a motel at Miami Beach and on the public highway in Downingtown, Pennsylvania.

Order affirmed.

156

## ORDER

AND Now, this 20th day of April, 1979, the order of the Workmen's Compensation Appeal Board is affirmed and judgment is entered in favor of the claimant, Margaret L. Pollard and against the Westinghouse Electric Corporation. Westinghouse Electric Corporation is ordered to pay the claimant the sum of $106.00 per week commencing October 7, 1974 and continuing indefinitely thereafter in accordance with provisions of The Pennsylvania Workmen's Compensation Act in force on that date. This award shall bear interest on deferred payments at the rate of ten percent per annum.

Westinghouse Electric Corporation is further ordered to pay the statutory funeral expense allowance of $750.00 and to reimburse Samuel J. Goldstein, attorney for the claimant, for costs as follows:

| | |
|---|---:|
| Dr. Robert S. Gordon | $250.00 |
| Dr. R. M. Brissie | 250.00 |
| Dr. Alexander M. Minno | 225.00 |
| Dr. Richard H. Gadsden | 325.00 |
| Dr. Cyril H. Wecht | 600.00 |
| Dr. John A. Jupin | 350.00 |
| Sara Fundenberg, court reporter | 304.00 |
| Edward G. Bittner, witness fee | 5.00 |
| William Howard Shea, witness fee | 5.00 |
| One-half the cost of deposition expense at Charleston, South Carolina, as per order of referee dated 4/15/77 | 235.91 |

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

As I read this record, the autopsy report, and the referee's findings of fact, I can only conclude that the claimant met his death after drinking himself into a stupor and then indulging in an overdose of depres-

sant drugs. His condition was such that the referee found that "taking into consideration the decedent's blood alcohol level of .322 or higher, and impairment of his intellectual reasoning, sensory perception and motor coordination he would not have been able to form a conscious, deliberate, intellectually reasoned intent to commit suicide. . . ."

I do not believe that an acutely intoxicated or self-drugged person can be considered to be "actually engaged" in the furtherance of the business or affairs of his employer. Therefore, I do not believe that this claimant's death arose in the course of his employment within the meaning of Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1). Further, the claimant's death here was simply not related to his employment and benefits should be denied.