Bethlehem Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Elizabeth Goerlich, Widow of William F. Goerlich, Deceased, Respondents.

Argued November 21, 1980, before Judges MENCER, CRAIG and PALLADINO, sitting as a panel of three.

*Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose,* for petitioner.

*Samuel R. DiFrancesco,* for respondent, Elizabeth Goerlich, widow of William F. Goerlich, deceased.

OPINION BY JUDGE PALLADINO, February 4, 1981:

This is an appeal by Bethlehem Steel Corporation (Bethlehem Steel) from an order of the Workmen's Compensation Appeal Board (Board) reversing a referee's denial of compensation and awarding benefits to Elizabeth Goerlich, the widow of a Bethlehem Steel employee. We reverse.

William Goerlich was employed by Bethlehem Steel for over 20 years as a metallurgic service engineer. The job was customer oriented and required him to spend a great deal of time away from his home office in Johnstown, Pennsylvania. In particular, Mr. Goerlich had responsibilities in and around the Detroit, Michigan area and was in the habit of leaving his home in Johnstown on Monday afternoon and proceeding to the Detroit-Dearborn, Michigan area where he remained to work until Friday before returning home. Mr. Goerlich was so accustomed to his frequent trips to Michigan that he kept his own automobile in Detroit and was a member of the Detroit Athletic Club which he regularly visited during his stays in the area. On Monday, January 26, 1976, after spending most of the day meeting with his superior at the Johnstown plant, Mr. Goerlich flew to Detroit and arrived and registered at the Dearborn Inn at or about 6:46 p.m. From the Inn he proceeded to the Detroit Athletic Club where he arrived at approximately 7:30 p.m. It is undisputed that Mr. Goerlich remained at the club until shortly after midnight and that during his stay he had some drinks while watching the Monday night football game with the club's bowling alley professional and other members of the club. After leaving the club, Mr. Goerlich was involved in a fatal automobile collision on Interstate 94, not far from the Dearborn Inn. Although the bartender at the club testified that he had served Mr. Goerlich only two Stroh's beers during the course of the evening, an

autopsy performed shortly after the fatal accident revealed that Mr. Goerlich had a .23 blood alcohol content at the time of death. Dr. Sidney A. Goldblatt, an expert witness called by Bethlehem Steel, testified that he had no doubt that a person with a .23 blood alcohol content would be grossly intoxicated and that in his opinion such person's ability to operate a motor vehicle would be significantly impaired. Dr. Goldblatt further testified that a blood alcohol content of .25 would cause most drinkers to lose consciousness or be very close to losing consciousness.

The claimant, Mr. Goerlich's widow, filed a petition for workmen's compensation benefits. In dismissing the petition and denying compensation the referee made the following findings of fact:

10. Decedent, from the time of his arrival at the Dearborn Inn at about 6:46 p.m. until his death at about 12:30 a.m. January 27th, 1976, did not have any contact with any business associates. Decedent spent the entire evening socializing with the club's bowling alley professional and other employees of the club. Decedent was not acting to further the business of his employer.

11. Decedent at the time of his death had a blood alcohol content of .23 percent.

12. Decedent was intoxicated while operating his automobile because of the .23 percent blood alcohol level.

On the basis of the above findings the referee concluded that Mr. Goerlich was not in the course of his employment at the Detroit Athletic Club or at the time of the accident which caused his death.

The Board reversed concluding that:

There is no rule that one out of town on business is only in the course of employment when seeing or associating with or contacting

business associates. There is nothing to indicate that decedent had abandoned his employment; the fact that he was intoxicated would not necessarily denote his abandonment of his employment.

Bethlehem Steel argues that Mr. Goerlich was not in the course of employment at the time of his death as required by Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. §411 (Act).[1] Section 301(c) of the Act reads in pertinent part as follows:

(1) The terms 'injury' and 'personal injury' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the *course of his employment* and *related thereto*, ... wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects.... The term 'injury arising in the course of his employment,' as used in this article, ... shall include all other injuries sustained *while the employe is actually engaged in the furtherance of the business or affairs of the employer*, whether upon the employer's premises or elsewhere.... (Emphasis added.)

A brief review of the major principles dealing with course of employment is necessary before turning to the facts of this case.

---

[1] Bethlehem Steel also argued that compensation was precluded by Section 301(a) of the Act which states in pertinent part "[t]hat no compensation shall be paid when the injury or death ... is caused by the employe's violation of the law...." 77 P.S. §431. Because we resolve the case on the course of employment issue in Bethlehem Steel's favor, we find it unnecessary to decide whether Mr. Goerlich was in violation of Michigan law at the time of his death.

First, the determination of whether an employee is in the course of his employment at the time of injury is one of law based upon findings of fact. Greene v. Marger, Inc., 12 Pa. Commonwealth Ct. 423, 317 A.2d 358 (1974). Second, when an employee sets out upon the business of his employer and is later fatally injured, there is a presumption that the employee was engaged in the furtherance of his employer's business at the time of his death. Wolfingbarger v. Addressograph-Multigraph Corp., 188 Pa. Superior Ct. 136, 146 A.2d 309 (1958). Third, the course of employment of a traveling worker is necessarily broader than that of an ordinary employee, and is to be liberally construed to effectuate the purposes of the Act. Combs v. Cole Brothers Circus, Inc., 165 Pa. Superior Ct. 346, 67 A.2d 791 (1949)....

*Aluminum Company of America v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 33, 36, 380 A.2d 941, 943 (1977).

While we are mindful of the fundamental considerations regarding traveling employees and the course of their employment as ably set forth by Judge Crumlish, Jr. (now President Judge Crumlish) in *Aluminum Company of America,* we feel that the facts of the instant case demonstrate that Mr. Goerlich was not in the course of his employment on the evening of his death.

The Board placed great weight on the often cited proposition that traveling employees are presumed to be furthering the business of their employer when fatally injured after starting out on company business. *Wolfingbarger v. Addressograph-Multigraph Corp., supra.* We do not question the validity of the basic presumption. However, to adhere to it under the facts of the instant case would be tantamount to holding

that a traveling employee is in the course of his employment 24 hours a day while away from the home office. We can find no authority for such an overextension of the presumption and must hold that the Board erred in reversing the referee on the record before us.

It is undisputed that Mr. Goerlich went to the club to socialize, that his business in the Detroit area was not to commence until Tuesday morning, and that he did not have any business related contacts during the course of the evening. While we agree with the Board's finding that "[t]here is no rule that one out of town on business is only in the course of employment when seeing or associating with or contacting business associates," the fact remains that such an employee must be furthering the business of his employer in a manner consistent with his contract of employment and reasonably related thereto at the time of his injury or death. *Farrell v. The House of Seagram, Inc.*, 8 Pa. Commonwealth Ct. 69, 301 A.2d 121 (1973); *Maher v. Hallmark Cards, Inc.*, 207 Pa. Superior Ct. 472, 218 A.2d 593 (1966). *See also Combs v. Cole Bros. Circus, supra.* We would reach an unrealistic and unconscionable result were we to hold that Mr. Goerlich was acting in a manner reasonably consistent with his contract of employment at the time of his death. One of the most important elements in determining whether an accident occurred in the course of employment "is that there be nothing to show that claimant 'had virtually *abandoned* the course of his employment, or that he was, at the time of the accident, *engaged in something wholly foreign thereto....*' (Emphasis added.)" *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 187, 305 A.2d 757, 763-64 (1976). (Citations omitted.) A .23 blood alcohol content at the time of death coupled with a record which is devoid of any evidence of

business contacts in the several hours preceding death convinces us that Mr. Goerlich had abandoned the course of his employment on the evening of his death.

The *Farrell* case cited previously lends further support for our conclusion that Mr. Goerlich was not in the course of his employment. In *Farrell*, we held that a salesman representative of a liquor company was not in the course of his employment because he was not "at the time he was injured or for some time prior thereto engaged in his employer's business." *Id.* at 70, 301 A.2d at 122. The evidence presented showed that Mr. Farrell was drinking in a tavern which was not a business account, and that he was injured in a fall outside the tavern after being ordered to leave because of rowdy conduct.

Finally, the cases relied on by the Board and the claimant are distinguishable from the present situation and therefore not controlling.[2]

Accordingly, we will enter the following

## ORDER

AND Now, February 4, 1981, the order of the Workmen's Compensation Appeal Board, docketed to

---

[2] In the following cases the employees were found to be in the course of employment at the time of their deaths. These cases involve substantially different factual circumstances than the case at bar. *See Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board*, 42 Pa. Commonwealth Ct. 147, 400 A.2d 1324 (1979), *rev'd on other grounds*, 489 Pa. 485, 414 A.2d 625 (1980) (employee had fatal accident while spending the evening with several co-workers at employer's lodge during an overnight business trip); *Aluminum Company of America, supra* (employee murdered while on his way back to motel after having dinner with a business friend); *Maher, supra* (traveling salesman fatally injured in automobile collision after returning from helping fellow salesman set up displays in territory outside decedent's normal sales area); and *Wolfingbarger, supra* (traveling salesman fatally injured in automobile accident during normal business hours).

No. A-77088, dated February 14, 1980 granting compensation to Elizabeth Goerlich is reversed and her claim petition is dismissed.