## Krapf, Appellant, v. Arthur.

Submitted December 13, 1928. <span style="color:transparent"></span>

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*R. J. Graeff*, and with him *D. J. Boyle*, for appellant. —There was sufficient testimony to support a findings of fact that the claimant was injured in the course of his employment: Flucker v. Carnegie Steel Co., 263 Pa. 113; Messer v. Mfg. L. & H. Co., 263 Pa. 5.

*William G. Wright*, and with him *Robert P. F. Maxwell* and *George F. Blewett* and *P. B. Roads*, for appellees.—The accident happened after the sales trip was completed and before the next day's work began: Maguire v. James Lees & Son Co., 273 Pa. 85; Poffen-

berger v. Martin, 83 Pa. Superior Ct. 524; Haddock v. Edgewater, 263 Pa. 120; Cymbor v. Binder, 285 Pa. 440; Stahl v. Watson Coal Company, 268 Pa. 452; Sorber v. Masters, 264 Pa. 582.

OPINION BY GAWTHROP, J., March 1, 1929:

The defendant conducts a wholesale lumber business at Lansford, Schuylkill County. The claimant, Andrew L. Krapf, who resides in Tamaqua, was employed by the defendant as a bookkeeper and salesman at a salary of $150 per month, with an additional allowance of $10 per month for his trolley fares between the two towns. He worked about half of the time as bookkeeper at the defendant's office and the other half of the time he spent as a travelling salesman, visiting lumber dealers within a convenient radius of Lansford. His office hours were from 8:00 A. M. to 5:00 P. M. when he worked as a bookkeeper and he usually left Tamaqua for Lansford on the trolley car leaving Tamaqua at 7:00 A. M. He received instructions from time to time as to what he was to do each day. Pursuant to instructions received from his employer at the office of the latter on October 27th he left his home at Tamaqua on the morning of October 28th on a two-day selling trip, and after soliciting business in numerous towns on October 28th and 29th returned to his home at Tamaqua about 7:30 P. M., October 29th, and spent the night there. The next morning about 7:00 A. M. he took the trolley car at Tamaqua for Lansford to report the results of his trip and receive instructions from the defendant as to what he was to do afterward. While on his way to Lansford he was accidentally injured in a collision between two trolley cars.

Based on findings of the material facts just stated the Workmen's Compensation Board concluded that the claimant sustained an accidental injury "while in the course of his employment," and affirmed the award

of the referee. The court below reversed the board and referee and entered judgment for the defendant; the present appeal followed.

The controlling question presented for our determination is whether, under the facts, the injury sustained by the claimant was incurred while he was in the course of his employment within the meaning of section 301, Article III of the Workmen's Compensation Act, that is, while he was actually engaged in the furtherance of the business or affairs of his employer. This is a question of law: Poffinberger v. Martin Co., 83 Pa. Superior Ct. 524; Callihan v. Montgomery, 272 Pa. 56; Maguire v. James Lees & Sons Co., 273 Pa. 85; Messer v. Manufacturers L. & H. Co., 263 Pa. 5.

The undoubted general rule is that an injury sustained by an ordinary employee while going to and from work, not on the employer's premises, is not compensable: Cymbor v. Binder Coal Co., 285 Pa. 440; Bossard v. N. & J. Pk. Co. and U. S. F. & G. Co., 93 Pa. Superior Ct. 301; Palko v. Taylor-McCoy Coal & Coke Co., 289 Pa. 401. But this rule has no application to a case in which the special circumstances of the employment covered the time going to and coming from the premises. In the latter case the responsibility of the employer is extended, because the employee, although off the premises, is actually engaged in furtherance of the master's business. Cases laying down this principle are: Haddock v. Edgewater Steel Co., 263 Pa. 120; Kelling v. Froemming Bros., 287 Pa. 471; Messer v. Mfrs. Light & Heat Co., supra; Knorr v. Central R. R. of N. J., 268 Pa. 172; Dunn v. Trego, 279 Pa. 518; and Logan v. Pot Ridge Coal Co., 79 Pa. Superior Ct. 421.

The learned judge of the court below in refusing to allow the claim held that the claimant failed to establish a state of facts which brought his case within the exception to the general rule that the term course of employment does not cover the time going to or from

work after or before regular working hours. He said that the claimant's two-day trip was ended when he returned to his home at Tamaqua and he was obliged to go back to Lansford the next day "in accordance with his usual custom to go there to do what he was told to do": that "his work did not begin on the 30th day of October until 8:00 A. M. He had fixed hours of service from 8:00 A. M. to 5:00 P. M. . . . . . . He was not on a special mission at the time of the accident. He was on his usual and regular trip to his employer's place of business to not only do what he might be directed to do that day, but incidentally report the results of his trip. He was doing what he would have done had he not gone to Sunbury and other places on the two previous days." For these reasons he held that the case was not governed by the principle decided in the line of cases of which Haddock v. Edgewater Steel Co., supra, is perhaps the leading case.

After the fullest consideration we have reached the conclusion that this view cannot be sustained. We are of the opinion that the claimant's trip was not ended when he returned to Tamaqua. He was employed by the defendant to perform a dual service. When he worked as a bookkeeper he had regular hours of employment on the defendant's premises, but when he went out to sell lumber he did not have regular hours of employment. We agree with the court below that if the claimant had been hurt in a similar collision on his way home to Tamaqua after leaving the premises of the defendant on October 27th it could not be held that he was hurt in the course of his employment and the case would fall within the general rule above stated. But when he started from Tamaqua the next morning on his two-day trip, his status was not that of bookkeeper, an employee with fixed hours of service, but that of a salesman who was in the course of his employment until he returned to the defendant's place of business at Lansford and reported the results

of his trip to his employer, unless in the meantime he temporarily departed from his employer's service. True, his actual service to his employer on the day of October 29th was suspended when he got to his home in Tamaqua. But it was not ended. It was immediately resumed when he boarded the trolley car the next morning (Knorr v. Central R. R. of N. J., supra), because his duty of reporting the results of his trip to the defendant had not been performed. "But none the less he was still upon his employer's errand and, in that sense, actually engaged in the latter's business or affairs": Haddock v. Edgewater Steel Co., supra. The fact that his home happened to be in Tamaqua rather than in Lansford makes no difference. Like the claimant in the Haddock case, he had to stay somewhere until he could report to his principal, and he cannot be charged with a departure from his employer's service because, when hurt, he had lodged at his home and only temporarily suspended the course of his employment. The basic inquiry in the case is what was the relation existing, at the time of the injury, between the employer and the person injured. We regard the claimant as being on duty at the time he was hurt. It follows that his injury was sustained while he was in the course of his employment with the defendant. This conclusion is in harmony with the liberal construction which the Compensation Act has received.

The only other question considered by the court below, and raised here, is whether there was sufficient competent evidence to sustain the findings of fact by the board. We deem discussion of it unnecessary because our careful reading of the testimony has convinced us that the findings are amply supported.

The judgment is reversed and the record is remitted to the court below that judgment may be there entered in favor of the claimant on the award.