**[J-71-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| JONATHAN PETERS, | : | No. 1 MAP 2020 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1835 |
| | : | CD 2017 dated July 18, 2019 |
| v. | : | Affirming the decision of the Workers |
| | : | Compensation Appeal Board at No. |
| | : | A16-1263 dated November 16, |
| WORKERS' COMPENSATION APPEAL | : | 2017. |
| BOARD (CINTAS CORPORATION), | : | |
| | : | ARGUED: September 16, 2020 |
| Appellees | : | |

## OPINION

**JUSTICE MUNDY** **DECIDED: November 17, 2021**

Pursuant to the Workers' Compensation Act (Act),[1] employers are liable to their employees for injuries arising in the course of employment. Whether an injured employee was in the course of his or her employment at the time of injury is a frequently litigated question of law. The intermediate appellate courts of this Commonwealth have long examined "course of employment" cases in two distinct ways, depending on whether the employee in question is a stationary or traveling employee. *See Rana v. Workers' Comp. Appeal Bd. (Asha Corp.)*, 170 A.3d 1279, 1284 (Pa. Cmwlth. 2017). With respect to traveling employees, these courts have consistently applied the following presumption: "[w]hen a traveling employee is injured after setting out on the business of his [or her] employer, it is presumed that he [or she] was furthering the employer's business at the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

time of the injury" unless the employer rebuts the presumption by showing that the employee's actions, at some point prior to the injury, "were so foreign to and removed from his [or her] usual employment that they constitute an abandonment of that employment." *Roman v. Workmen's Comp. Appeal Bd. (Dep't of Envtl. Res.)*, 616 A.2d 128, 130 (Pa. Cmwlth. 1992). The foregoing rebuttable presumption is sometimes referred to as the traveling employee doctrine, the continuous coverage rule, or the commercial traveler rule. This Court has never specifically addressed the traveling employee doctrine; therefore, we granted review to consider the contours of a traveling employee's course of employment.

## I. Factual Background and Procedural History

At all times relevant to this appeal, Jonathan Peters (Claimant) was employed by Cintas Corporation (Employer) as a uniform sales representative. In this position Claimant worked half-days in Employer's Allentown, Pennsylvania branch office on Mondays, Tuesdays, and Wednesdays, and traveled the remainder of those days, as well as Thursdays and Fridays, to meet with, and present products to, potential customers in the region around Reading, Pennsylvania. Following his last sales appointment on February 27, 2015, Claimant attended an Employer-sponsored event at a pub in Allentown called the Tilted Kilt. After leaving the event Claimant was injured in a motor vehicle accident. Alleging that the motor vehicle accident occurred during the course of his employment with Employer, Claimant filed a claim petition seeking partial disability benefits from February 28, 2015 to April 2, 2015, and total disability benefits from April 3, 2015 onwards. Employer responded by filing an answer, in which it specifically denied that Claimant was in the course of his employment at the time of the motor vehicle accident.

Claimant's claim petition was assigned to a Workers' Compensation Judge (WCJ), who, upon agreement of the parties, bifurcated the matter to initially determine whether Claimant was in the course of his employment at the time of the motor vehicle incident, such that the injuries are compensable under the Act, before examining the medical component of the claim. The WCJ held hearings on the course of employment issue on February 10, 2016, and April 1, 2016.

At the first hearing before the WCJ, Claimant testified in support of his claim petition. Claimant testified that February 27, 2015, a Friday, was a full sales day for him and that he met with customers in the northern portion of his sales territory that day. WCJ's Decision, Finding of Fact (FOF) ¶ 5. He stated that after his last sales appointment that day he drove to Allentown to attend the event at the Tilted Kilt. *Id.* He indicated during his testimony that he passed the highway exit to his home on his way to the Tilted Kilt. *Id.*

By way of background, Claimant testified that his sales manager, Michael Cintron, had invited the sales representatives to the event earlier that week. *Id.* During his testimony Claimant described the event as a celebration to mark the end of a "sales blitz" week. *Id.* According to Claimant, these types of events were held on prior occasions during sales blitzes. *Id.* Claimant believed these events, including the one on February 27, 2015, to be "sort of" mandatory. *Id.*

With respect to the event itself, Claimant testified that after arriving at the Tilted Kilt on February 27, 2015, there was a recap of the work performed during the sales blitz. *Id.* He stated that appetizers and drinks, which were ultimately paid for by Employer, were served. *Id.* Claimant testified that he left the Tilted Kilt at approximately 8:00 p.m. and that the motor vehicle accident occurred on his way home from the Tilted Kilt. *Id.*

At the second hearing before the WCJ, Employer presented the testimony of Theodore Smith, a sales representative with Employer, and Michael Cintron, a sales manager with Employer, in defense of Claimant's claim petition. Consistent with Claimant's testimony, Theodore Smith testified that Michael Cintron had invited the sales representatives to the event at the Tilted Kilt and that the appetizers and drinks served were ultimately paid for by Employer. *Id.* ¶ 6. Michael Cintron confirmed these facts during his testimony, adding that these types of events were routinely held during sales blitzes as a voluntary perk. *Id.* ¶ 7.

Contrary to Claimant's testimony, both Theodore Smith and Michael Cintron emphasized the voluntariness and social nature of the event during their testimony. *Id.* ¶¶ 6-7. Theodore Smith described the event as a chance for the sales representatives to relax after the sales blitz. *Id.* ¶ 6. Both Theodore Smith and Michael Cintron rejected Claimant's representation that work performed during the sales blitz was recapped at the event. *Id.* Theodore Smith specifically testified that work was not discussed during the event, stating that the conversations at the event were general "chit chat." *Id.*

With respect to the motor vehicle accident, Michael Cintron testified that he received a call from Claimant sometime after 8:00 p.m. on February 27, 2015, reporting that he had been in a motor vehicle accident. *Id.* ¶ 7. Michael Cintron further testified that during the phone conversation Claimant stated that he was not on his way home from the Tilted Kilt at the time of the motor vehicle accident, but from some other event. *Id.* However, Michael Cintron indicated during his testimony that he could not recall specifically where Claimant said he was coming from. *Id.*

Following the second hearing before the WCJ, Claimant submitted additional testimony in support of his claim petition, which was given at a deposition on April 16, 2016. During his deposition, Claimant maintained that work was discussed at the event

at the Tilted Kilt and, in doing so, testified as to a specific conversation he had with Adam Rehl, a production manager with Employer. *Id.* ¶ 9. In response, Employer submitted the testimony of Adam Rehl, which was given at a deposition on May 18, 2016. He testified, in relevant part, that he was at the Tilted Kilt on February 27, 2015, socially and not as part of the event. *Id.* ¶ 8. During his testimony, Adam Rehl stated that he had no recollection of seeing or interacting with Claimant at the Tilted Kilt on February 27, 2015. *Id.*

In a decision circulated November 1, 2016, the WCJ denied and dismissed Claimant's claim petition. Therein, the WCJ explained that for his injuries to be compensable under the Act, Claimant had the burden of demonstrating that he was in the course of his employment with Employer at the time of the motor vehicle accident, which required him to show that he was actually engaged in the furtherance of Employer's business or affairs at the time of the accident. *Id.*, Conclusion of Law (COL) ¶ 2; *see* Section 301(a), (c)(1) of the Act, 77 P.S. §§ 411(a), 431. In reviewing whether Claimant met this burden, the WCJ, as set forth in relevant part above, summarized the testimony presented by the parties. The WCJ credited in part and rejected in part Claimant's testimony and credited the testimonies of Theodore Smith, Michael Cintron, and Adam Rehl. WCJ's Decision, FOF ¶ 10. The WCJ did not specifically identify the portions of Claimant's testimony that he deemed credible. However, the WCJ specifically rejected Claimant's representations that the event at the Tilted Kilt was mandatory and that work performed during the sales blitz was discussed at the event in light of the consistent testimony of Theodore Smith and Michael Cintron indicating the opposite. *Id.* The WCJ wrote that he did not doubt that work was discussed at the event but that work-related discussions do "not transform every meeting into a business meeting." *Id.*

Based upon the credited testimony, the WCJ concluded that Claimant failed to demonstrate that he was acting in furtherance of Employer's business or affairs at the time of the motor vehicle accident. In doing so, the WCJ relied on *Brown v. Workmen's Compensation Appeal Board (Liken Employment Nursing Services)*, 588 A.2d 1014 (Pa. Cmwlth. 1991), and *Canning v. Workers' Compensation Appeal Board (Pa. Senate)*, No. 985 C.D. 2014, 2015 WL 5121496 (Pa. Cmwlth. Jan. 9, 2015), neither of which involved the traveling employee doctrine. The claimant in *Brown*, who was not a traveling employee, was "struck by a motor vehicle while crossing a public roadway after leaving [her e]mployer's annual Christmas party held at [the e]mployer's office." *Brown*, 588 A.2d at 1015. Thereafter, the claimant filed a claim petition "alleging that she was in the course of her employment at the time of the automobile-pedestrian accident." *Id.* After holding several hearings, a referee determined the claimant was no longer in the course of her employment at the time of the injury and the Workers' Compensation Appeal Board (WCAB) affirmed. The claimant then appealed to the Commonwealth Court, which affirmed. Before the Commonwealth Court, the claimant argued that the WCAB erred by failing to apply one of the exceptions to what is commonly referred to as the "going and coming rule," which provides that

> injuries sustained by an employee traveling to and from work are generally not compensable under the Act unless[:] (1) the employment contract includes transportation; (2) the employee had no fixed place of employment; (3) the employee was on a special assignment; or (4) special circumstances indicate that the employee was furthering the business of the employer.

*Id.* at 1016. The court rejected the claimant's argument, concluding that the going and coming rule was not implicated in the case because the "[c]laimant was neither going to nor coming from work when she was injured." *Id.*

Notwithstanding the inapplicability of the going and coming rule, the Commonwealth Court did not end its analysis there. The court examined whether the claimant's off-premises injury was sustained while she was engaged in the furtherance of her employer's business activities. The court ultimately concluded that even if the party benefited the employer by "cultivating interpersonal relationships," the claimant was not furthering her "[e]mployer's business at the time of her accident" because she was injured "while returning from [the e]mployer's party and not while attending the social event." *Id.* at 1017 (emphasis omitted). As such, the Commonwealth Court agreed with the WCJ and the WCAB that the claimant was not in the course of her employment at the time of the accident.

In *Canning*, the claimant, who was not a traveling employee, was injured when she fell down a flight of stairs while leaving a party hosted by a friend of her employer. The claimant filed a claim petition alleging that she was in her course of employment at the time of the accident. In its review of the case the Commonwealth Court, relying on *Brown*, concluded that regardless of whether the party was "designed to foster morale," the claimant was injured while leaving the party and not during the party itself. *Canning*, 2015 WL 5121496 at *5. Therefore, the Commonwealth Court determined that the claimant was not in the course of her employment at the time of the accident.

Citing *Brown* and *Canning*, the WCJ concluded that even if the event at the Tilted Kilt could be construed as furthering Employer's business or affairs as a "relationship-building or team-building activity," Claimant could not be considered to have been furthering his Employer's business at the time of the motor vehicle accident because it occurred after he left the event. WCJ's Decision, COL ¶ 2.

The WCJ did not specifically identify or discuss the traveling employee doctrine in his decision. However, the WCJ did acknowledge that Claimant "is considered a traveling

employee" and that "consideration is given to that presumption that he has no fixed place of employment." *Id.* Nonetheless, the WCJ concluded Claimant could not be considered in his course of employment at any point beyond when he, admittedly, passed the highway exit to his home to attend the event at the Tilted Kilt because the event was voluntary and social in nature.[2] *Id.* Accordingly, the WCJ determined that Claimant was not in the course of his employment with Employer at the time of the motor vehicle accident, and therefore, the injuries sustained by Claimant are not compensable under the Act.[3]

Claimant appealed the WCJ's decision to the WCAB. Without taking additional evidence, the WCAB affirmed by opinion and order dated November 16, 2017. Claimant then appealed to the Commonwealth Court. The Commonwealth Court, considering the case en banc, affirmed in a published opinion and order authored by the Honorable Anne E. Covey. *See Peters v. Workers' Comp. Appeal Bd. (Cintas Corp.)*, 214 A.3d 738 (Pa. Cmwlth. 2019).

The Commonwealth Court began by explaining that it "has analyzed course of employment cases in two ways depending on whether the claimant is a traveling or stationary employee" and that with respect to traveling employees it has applied the presumption afforded by the traveling employee doctrine. *Id.* at 740 (quoting *Rana*, 170 A.3d at 128). The court examined whether Claimant was a traveling employee, such that

---

[2] Based upon his use of the word "presumption," this Court believes the WCJ considered and rejected application of the presumption afforded by the traveling employee doctrine on the grounds that Claimant abandoned his employment at some point prior to the motor vehicle accident.

[3] The WCJ found "as fact that Claimant was not within the course and scope of his employment at the time of" the motor vehicle accident. WCJ's Decision, FOF ¶ 10. However, despite the WCJ's labeling of this conclusion as a finding of fact, the question of whether an employee was in the course of his or her employment at the time of injury is a question of law. *Wachs v. Workers' Comp. Appeal Bd. (Am. Off. Sys.)*, 884 A.2d 858, 862 (Pa. 2005).

he would be entitled to the presumption, and in doing so applied the following two part test: (1) "[w]hether the claimant's job duties involved travel" and (2) "whether the claimant works on the employer's premises or whether the claimant has no fixed place of work." *Id.* (quoting *Holler v. Workers' Comp. Appeal Bd. (Tri Wire Eng'g Solutions, Inc.)*, 104 A.3d 68, 71 (Pa. Cmwlth. 2014)). Acknowledging that Claimant met the criteria of a traveling employee, and that the facts of the case were sufficient to give rise to the presumption that Claimant was within the course of his employment at the time of the motor vehicle accident, the court turned to whether Employer rebutted the presumption. In doing so, the Commonwealth Court reviewed and focused on the decisions in *Maher v. Hallmark Cards, Inc.*, 218 A.2d 593 (Pa. Super. 1966) and *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 469 A.2d 723 (Pa. Cmwlth. 1984).

The underlying facts of *Maher* and *Oakes* are similar. Both cases involved employees who were fatally injured on their way home from work-related travel. The reviewing courts examined whether the employees were in the course of their employment at the time of the fatal accidents and in doing so whether the presumption afforded by the traveling employee doctrine continued to apply at the time of the accidents. The courts ultimately concluded the respective employees were within their course of employment at the time of the fatal accidents, reasoning that "[t]he homeward trip [is] a necessary part of the business exclusion." *Maher*, 218 A.2d at 596; *Oakes*, 669 A.2d at 726. In the absence of evidence that the employees had abandoned their employment prior to the fatal accidents, the reviewing courts determined the employees remained in their course of employment at the time of the fatal accidents as they had not yet arrived home. *Maher*, 218 A.2d at 596 (setting forth that under the traveling employee doctrine, a traveling employee's "continuity of employment is not broken unless the

employe's activity constitutes an abandonment of employment."); *Oakes*, 669 A.2d at 726.

Applying *Maher* and *Oakes* to Claimant's case, the Commonwealth Court determined that Claimant's homeward trip ended when he passed the highway exit to his home. As such, the Commonwealth Court concluded that Claimant was not in the course of employment beyond this point, specifically holding that Claimant's "travel from the Tilted Kilt to his home cannot be considered in the course of his employment." *Peters*, 214 A.3d at 743. In reaching this decision, the Commonwealth Court rejected Claimant's argument that because the event at the Tilted Kilt was Employer-sponsored, he remained in the course of his employment in his travel to the event, during the event, and on his way home from the event. The court wrote that to accept Claimant's argument it would have to reverse the WCJ's credibility determinations that the event was voluntary and social in nature, an act which it is not permitted to do. *Id.* (citing *Jacobs v. Unemployment Comp. Bd. of Review (Bridgeview Partners)*, 137 A.3d 1260 (Pa. 2016) (per curiam order) (reversing a decision for the Commonwealth Court because "it substituted its own assessment of the evidence and the credibility of the witnesses for that of the Unemployment Compensation Review Board[]."")). Accordingly, the Commonwealth Court upheld the denial of Claimant's claim petition.

The Honorable Michael H. Wojcik authored a concurring opinion in which he concurred with the result reached by the majority but "disagree[d] with its analysis insofar as it emphasizes the location of the activity instead of whether the activity was employment-related." *Id.* at 748 (Wojcik, J., concurring). According to Judge Wojcik, Claimant ceased to be in the course of his employment upon attending the event, because, as the WCJ found, "the event was voluntary and not work-related." *Id.* Based

upon this determination, Judge Wojcik concluded that "while [C]laimant may be a traveling employee, he was not at the time of his injury." *Id.*

The Honorable Reneé Cohn Jubelirer authored a dissenting opinion in which she disagreed with the majority's conclusion that Claimant was not within the course of his employment at the time of the motor vehicle accident. She believed the presumption afforded by the traveling employee doctrine continued to apply through the motor vehicle accident, writing that she could not conclude "that driving by one's exit home on a highway to attend an event organized and paid for by one's employer . . . to constitute abandonment of one's employment." *Id.* at 747 (emphasis omitted) (Cohn Jubelirer, J., dissenting).

Judge Cohn Jubelirer did not agree with the majority's emphasis on the location of Claimant's home in holding that Claimant was no longer in the course of his employment after passing the highway exit to his home. She pointed out that "[p]resumably, had Claimant's home been located on the other side of the Tilted Kilt, or his travels taken him back to town in a different direction, the [m]ajority would not have found that he abandoned his employment." *Id.* Instead, Judge Cohn Jubelirer focused on the nature of the event at the Tilted Kilt.

Judge Cohn Jubelirer acknowledged in her dissenting opinion that the WCJ found the event to be voluntary, but she did not consider that fact to be dispositive. In this regard, she relied on *Investors Diversified Services v. Workers' Compensation Appeal Board (Howard)*, 520 A.2d 958 (Pa. Cmwlth. 1987). In that case, the claimant, a traveling employee, attended a Christmas party hosted by his employer at the home of one of the employer's managers. The claimant was injured in a motor vehicle accident on his way home from the party. In its consideration of the case, the Commonwealth Court reviewed whether the claimant's injury occurred during the course of his employment. The

claimant's employer argued that the claimant's injury was not sustained in the course of employment as the party "was a purely social function unrelated to the employer's business affairs." *Id.* at 959. The court disagreed, concluding that the party furthered the employer's business and affairs by "foster[ing] good relationships" between employees. *Id.* The Commonwealth Court ultimately determined that the claimant was in the course of his employment during and on his way home from the party.

Based upon *Investors Diversified Services*, Judge Cohn Jubelirer wrote that "[j]ust because attendance was not required does not mean the event was not work related." *Peters*, 214 A.3d at 747(Cohn Jubelirer, J., dissenting). She stated that she could not conclude that Claimant's attendance of the event at the Tilted Kilt to be so foreign to and removed from his usual employment as to constitute abandonment of employment in light of the following: "(1) Claimant's employer . . . invited him to the social event; (2) Employer organized and paid for the social event; (3) Employer regularly held a social event during sales blitzes; and (4) the social event occurred at the end of Claimant's workday." *Id.* at 744. Accordingly, Judge Cohn Jubelirer opined that she would have reversed the denial of Claimant's claim petition and remanded for the WCJ to consider the medical component of the claim.

Claimant then initiated the instant appeal by the filing of a petition for allowance of appeal, which we granted to consider the following two issues:

> (1) A traveling employee is entitled to a presumption that he is in the course
> and scope of employment when traveling to or from work unless his actions
> at the time of [the] accident are so foreign and removed from his usual
> employment to constitute abandonment of employment. What constitutes
> an abandonment of employment such that a travelling employee is entitled
> to benefits under the . . . Act?
>
> (2) A traveling employee is entitled to a presumption that he is in the course
> and scope of employment when traveling to or from work unless his actions
> at the time of the accident are so foreign and removed from his usual

employment to constitute abandonment of employment. Consequently, is an injury compensable under the . . . Act when an employee is injured while returning home after attending a work-sponsored social event?

*Peters v. Workers' Comp. Appeal Bd. (Cintas Corp.)*, 223 A.3d 238 (Table) (Pa. 2020) (per curiam order).

## II.     Parties' Arguments

As his framing of the issues reflects, Claimant advocates for application of the traveling employee doctrine in this case. Claimant submits that he is a traveling employee and, as such, is entitled to a presumption that he was in the course of his employment at the time of the motor vehicle accident. He disagrees with the Commonwealth Court's determination that he ceased to be in the course of his employment after he passed the highway exit to his home, stating that "this analysis ignores the fact that the event [he] attended after driving past his home exit was [E]mployer-sponsored." Claimant's Brief (Br.) at 32.

Claimant contends that we should adopt the rationale set forth in Judge Cohn Jubelirer's dissenting opinion, and hold that a traveling employee's attendance of a work-sponsored social event does not break the continuum of employment. As such, it is Claimant's position that he remained in the course of his employment during and on his way home from the Tilted Kilt, including at the time of the motor vehicle accident. Accordingly, Claimant requests we reverse the decision of the Commonwealth Court upholding the denial of his claim petition.

Employer responds that application of the traveling employee doctrine in his case is "unnecessary and a red herring." Employer's Br. at 12. Citing *Brown*, Employer contends that "[t]he Commonwealth Court has held that injuries that occur while commuting to or from [] a non-mandatory non work-related social event is not within the

course and scope of employment." *Id.* at 5-6. As Claimant, like the claimant in *Brown*, was injured while "allegedly driving home from a non-mandatory, non-business meeting," Employer argues Claimant was not in the course of his employment at the time of the motor vehicle accident. Employer's Br. at 15.

Furthermore, Employer contends that the traveling employee doctrine should not apply in general claim cases such as this one. Employer submits that we should limit application of the traveling employee doctrine to fatal claim cases. Employer argues that there can be no presumption in favor of a claimant in a general injury claim case because under the Act "the claimant has the burden of proof that he or she was injured in the course and scope of employment and is alive to provide testimony to that end." *Id.* (emphasis omitted). In arguing that application of the doctrine should be limited to fatal claim cases, Employer contends that fatal claim petitions are "unique from a [c]laim [p]etition because the decedent, of course, does not have the opportunity to testify and cannot provide specific testimony about the circumstances that led to the fatal claim." *Id.* at 26.

Alternatively, if we decide that the traveling employee doctrine does apply in this case, Employer submits that Claimant abandoned his employment prior to the motor vehicle accident. Employer contends that Claimant abandoned his employment when he passed his home and proceeded to the Tilted Kilt because "[h]is attendance was not mandatory for his employment" nor was the event "work-related." *Id.* at 38. As such, Employer argues Claimant was not in the course of his employment at the time of the motor vehicle accident. Accordingly, Employer asks that we affirm the decision of the Commonwealth Court.

### III. Scope and Standard of Review

Preliminarily, before we turn to the merits of the parties' arguments, we set forth our scope and standard of review. This Court's "standard of review of an agency decision is limited to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence." *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Hilton)*, 117 A.3d 232, 241 (Pa. 2015); *see also* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. The ultimate issue in this case is whether Claimant was in the course of his employment with Employer at the time of the motor vehicle accident such that his injuries are compensable under the Act. The issue of "whether an employee is acting within the course of his employment at the time of his injury or death is a question of law and is reviewable *de novo*." *Wachs v. Workers' Comp. Appeal Bd. (Am. Off. Sys.)*, 884 A.2d 858, 862 (Pa. 2005). With our scope and standard of review in mind, we turn to the merits of this appeal.

### IV. The Act

As this appeal concerns whether Claimant's injuries are compensable under the Act, we begin our analysis of the merits by reviewing the relevant sections of the Act. In reviewing the Act, we must be mindful that "the Act is remedial legislation" and, therefore, "is subject to a liberal construction to effectuate the Act's purpose of benefiting injured workers and their dependents." *Gallie v. Workers' Comp. Appeal Bd. (Fichtel & Sachs Indus.)*, 859 A.2d 1286, 1291-92 (Pa. 2004); *see also* Section 1928 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928 (listing the classes of statutes that are to be strictly construed and setting forth that all other statutes "shall be liberally construed to effect their objects and to promote justice.").

Pursuant to Section 301(a) of the Act, "[e]very employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment." 77 P.S. § 431. Thus, an injury is compensable under the Act if it was sustained in the course of employment. Section 301(c)(1) of the Act defines the terms "injury," "personal injury," and the phrase "injury arising in the course of employment," as follows:

> The terms "injury" and "personal injury" as used in this [A]ct, shall be construed to mean an injury to an employe, regardless of physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto . . . . The term "injury arising in the course of his employment" as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because the reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by nature of his employment.

77 P.S. § 411(1).

As we previously recognized, the foregoing statutory language is "somewhat unwieldy at first blush" but "distills to a few simple rules." *US Airways, Inc. v. Workers' Comp. Appeal Bd. (Bockelman)*, 221 A.3d 171, 176 (Pa. 2019). Broken down, the foregoing statutory language reflects that an employee's injury is considered to have arisen in the course of employment in the following two circumstances:

The first is when an employee is injured on or off the employer's premises while engaged in furtherance of the employer's business or affairs. . . .

The second type of injury that arises in the course of employment occurs when an employee is not furthering [the] employer's business or affairs but nonetheless: (1) "is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on;" (2) "is required by the nature of his employment to be present on his employer's premises;" and (3) "sustained injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon."

*Id.* (quoting *Workmen's Comp. Appeal Bd. v. U.S. Steel Corp. (Slaugenhaupt)*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977)). It is the injured claimant's burden to demonstrate that his or her injury was sustained in the course of employment. *O'Rourke v. Workers' Comp. Appeal Bd. (Gartland)*, 125 A.3d 1184, 1189 (Pa. 2015).

In the present matter, Claimant was injured off Employer's premises. Therefore, pursuant to Section 301(c)(1) of the Act, Claimant must have been furthering Employer's business and affairs at the time of the motor vehicle accident for the accident to be considered to have arisen in the course of his employment with Employer.

## V. The Presumption

Before this Court, Claimant argues that he was in the course of his employment at the time of the motor vehicle accident. In doing so, Claimant implicates the traveling employee doctrine and contends that under the doctrine he is presumed to have been in the course of his employment at the time of the motor vehicle accident. As indicated above, this Court has never specifically addressed the traveling employee doctrine. In light of this, we consider it necessary to examine the doctrine and its development in Pennsylvania before considering its applicability in this case.

Although we have never specifically addressed the traveling employee doctrine, its development in Pennsylvania can be traced to three early twentieth century course of employment[4] cases decided by this Court. The first of these cases is *Haddock v. Edgewater Steel Co.*, 106 A. 196 (Pa. 1919). In that case, Haddock was employed by a steel company in Pittsburgh, Pennsylvania. In that position, Haddock was sent by his employer to Lowellville, Ohio to examine the equipment of another steel company. Haddock traveled to Lowellville by rail and after making the required examination, returned to Pittsburgh the same day by rail. After returning to Pittsburgh, "while on the way to his residence," Haddock "was accidentally struck by an automobile, at a street crossing, which causally resulted in his death." *Id.* In our review, we considered whether Haddock was in the course of his employment at the time of the fatal accident, ultimately concluding that he was. In our decision, we noted that we must apply a liberal construction to the phrase "course of employment" and in doing so concluded that we would consider Haddock to be within the course of his employment at the time of the fatal accident because there was no evidence that he "ceased to be active in the furtherance of [his employer's] business or affairs" before the accident. *Id.* at 197.

After *Haddock*, we decided *Palko v. Taylor-McCoy Coal & Coke Co.*, 137 A. 625 (Pa. 1927). In that case, Palko was employed by a coal company. After finishing his regular work, his employer instructed him to perform extra work. Palko left his employer's premises "for home to get something to eat, intending to return" after his meal to perform the extra work. *Id.* at 626. On his way home, Palko was fatally injured in an accident on the land of another coal company. In our review of whether Palko was in the course of

---

[4] In considering the development of the traveling employee doctrine, we note that while the Act has been revised several times since its enactment, the Act has always defined an injury arising in the course of employment as one sustained where the employee is "actually engaged in furtherance of the business or affairs of the employer." *See* 77 P.S. § 411.

his employment at the time of the fatal accident, we examined *Haddock* and noted that under that decision an employee injured while off premises must be "actually engaged in the performance of some yet incompleted [sic] business of his employer." *Id.* We concluded that Palko was not in the course of his employment at the time of his fatal accident because he was injured in the interval between his regular work and the extra work he was to perform on his return to the employer's premises. We explained that an employee's "'course of employment' does not cover all the time during the day" and specifically noted that an employee's course of employment "does not extend to intervals of time between regular working hours, nor to the interval between regular working hours and a new, additional, or different work to be undertaken at another period of time, in which intervals the employee leaves the premises" as the employee is not engaged in the furtherance of the employer's business or affairs during these times. *Id.* at 626.

Following *Palko*, we decided *Krapf v. Arthur*, 146 A. 894 (Pa. 1929) (per curiam opinion). In that case, Krapf was employed by a wholesale lumber business as a bookkeeper and a traveling salesman. Krapf split his time equally between these two roles. In his role as a traveling salesman, Krapf went on a two day selling trip. After returning from the trip he spent the night at his house. The next morning Krapf took a trolley from his house to his employer's workplace and while on the trolley "he was accidentally injured in a collision between two trolley cars." *Krapf v. Arthur*, 95 Pa. Super. 468, 470 (1929). In its review of the case, the Superior Court considered whether Krapf was in the course of his employment at the time of injury. In doing so, the court, citing *Palko*, noted that while the "general rule is that an injury sustained by an ordinary employee while going to and from work not on the employer's premises[] is not compensable" there are special circumstances where an employee's time going to and

coming from his or her employer's premises is within the course of employment.[5]  *Id.* at 471.  In this regard, the Superior Court, relying on *Haddock*, wrote that "the responsibility of the employer is extended" to cover injuries where an employee, "although [injured] off the premises, is actually engaged in furtherance of the master's business" at the time of injury.  *Id.*

The Superior Court ultimately concluded that there were special circumstances in Krapf's case to exempt him from the general rule that course of employment does not include the time traveling to or from work.  The court wrote that Krapf "was in the course of his employment until he returned to [his employer's] place of business . . . and reported the results of his [sales] trip to his employer, unless in the meantime he temporarily departed from his employer's service."  *Id.* at 472.  The court acknowledged that Krapf's course of employment "was suspended when he got to his home" but "immediately resumed when he boarded the trolley car the next morning because his duty of reporting the results of his trip to the defendant had not been performed."  *Id.* at 473.  As Krapf was injured while going to his employer's premises to report the results of his sales trip, the Superior Court concluded that he was furthering his employer's affairs at the time of his injury and, therefore, in the course of his employment at the time of injury.  Upon review of the Superior Court's opinion, we affirmed.  We reasoned that Krapf, "who had been on a business trip, had not completed his mission at the time of the accident" as he was injured while "on the way to his employer's office . . . to report the results of his work."  *Krapf*, 146 A. at 895.

While we did not refer to a "presumption" in *Haddock*, *Palko*, or *Krapf*, these cases, when read together, reflect a rule quite similar to the traveling employee doctrine, in that

---

[5] As set forth above, today, this rule is commonly referred to as the going and coming rule.  *See Brown*, 588 A.2d at 1016; *see also Wachs*, 884 A.2d at 861.

we held we consider an employee on work-related travel to be in the course of his or her employment during the travels unless there was evidence that the employee ceased to be acting in furtherance of his or her employer's business and affairs.

The Superior Court issued the first appellate decision recognizing a presumption in favor of traveling employees in *Beaver v. George W. Boyd Co.*, 161 A. 900 (Pa. Super. 1932). In that case, Beaver was a traveling salesman employed by two different companies, the George W. Boyd Company and the Tri State Butter Company. While on a sales trip, Beaver suffered fatal injuries in a motor vehicle accident. His widow sought compensation under the Act from the George W. Boyd Company. In defending the claim, the company argued that in the absence of proof of where Beaver was driving to at the time of the fatal accident, it was just as likely that he was on his way to see customers of the Tri State Butter Company as customers of the George W. Boyd Company. The record reflected that up until the time of the fatal accident Beaver had been exclusively calling on customers of the George W. Boyd Company. As such, the specially presiding judge reviewing the claim awarded benefits to the widow, writing "that the presumption of the law is that, having shown [an employee] to have started out upon the business of the employer, the presumption would be that he continued in that business until evidence appears to show the contrary." *Id.* at 901. In its review of the case, the Superior Court affirmatively quoted the foregoing language in upholding the award of benefits.

The Superior Court considered the scope of employment of traveling employees at length in *Combs v. Cole Brothers Circus*, 67 A.2d 791 (Pa. Super. 1949). In that case, the Superior Court considered whether the employee of a traveling circus, who was fatally injured while traveling from a performance in Greensburg, Pennsylvania to a performance in Johnstown, Pennsylvania, was in the course of his employment at the time of a fatal accident. Like we did in *Haddock*, the Superior Court determined that it must liberally

construe the phrase "course of employment." *Combs*, 67 A.2d at 794. In doing so, the Superior Court determined that "[t]he course of employment of a traveling worker is necessarily broader than that of an ordinary employee" and, therefore, "[i]f the work of [an] employe necessities travel, during such travel, the employe is in the course of his employment" unless "the employe [] remove[s] himself from the course of employment or abandon[s] his employment." *Id.* The Superior Court ultimately concluded that because his job required him to travel with the circus and because he was traveling with the circus at the time of his fatal accident, the employee was in the course of his employment at the time of the fatal accident.

After *Combs*, the Superior Court clarified what actions constitute abandonment. In *Spry v. Polt*, 142 A.2d 484 (Pa. Super. 1958), the Superior Court held that abandonment of employment occurs when an employee's actions are "foreign to and removed from his usual employment." *Id.* at 486. In *Mitchel v. Holland Furnace Co.*, 149 A.2d 662 (Pa. Super. 1959), the Superior Court determined a traveling employee's "slight and temporary departure from work and administering to [] personal comforts or conveniences" such as procuring food, drink, or lodging, "does not break the course of employment." *Id.* at 665.

After its inception in 1968, the Commonwealth Court was charged with reviewing appeals in workers' compensation cases. In its review of course of employment cases involving traveling employees, the Commonwealth Court has continued to apply the presumption developed by the Superior Court. *See, e.g.*, *Total Assocs. v. Workers' Comp Appeal Bd. (Sternick)*, 814 A.2d 837 (Pa. Cmwlth. 2003); *Southland Cable Co. v. Workers' Comp. Appeal Bd. (Emmett)*, 598 A.2d 329 (Pa. Cmwlth. 1991); *Port Auth. of Allegheny Cty. v. Workers' Comp. Appeal Bd. (Stevens)*, 452 A.2d 902 (Pa. Cmwlth. 1982) (non-fatal claim case); *Workmen's Comp. Appeal Bd. v. Borough of Plum*, 340 A.2d 637 (Pa.

Cmwlth. 1975). As it stands developed today, the traveling employee doctrine provides as follows:

> When a traveling employee is injured after setting out on the business of his employer, it is presumed that he was furthering the employer's business at the time of the injury. The employer bears the burden of rebutting the presumption. To meet its burden the employer must prove that the claimant's actions were so foreign to and removed from his usual employment that they constitute an abandonment of that employment. Temporary departures from the work route for the purpose of administering to the comforts of an off-the-premises employee, including authorized breaks for lunch, will not interrupt the continuity of the employee's course of employment.

*Roman*, 616 A.2d at 130-31 (internal quotation marks and citations omitted).

The traveling employee doctrine is not unique to Pennsylvania. The Supreme Court of Washington reviewed and applied the traveling employee doctrine for the first time in *Ball-Foster Glass Container Co. v. Giovanelli*, 177 P.3d 692 (Wash. 2008). In reviewing the traveling employee doctrine the court recognized that it is "the prevailing rule throughout the United States." *Id.* at 696 (citing *Buczynski v. Indus. Comm'n of Utah*, 934 P.2d 1169, 1173 (Utah Ct. App. 1997) (examining course of employment decisions across the country including *Roman*)). The Supreme Court of Washington set forth the doctrine in similar terms as the Commonwealth Court did in *Roman*, writing that under the doctrine "[a] traveling employee is generally considered to be in the course of employment continuously during [an] entire [work-related] trip, except during a distinct departure on a personal errand." *Id.* The court explored the rationale behind the doctrine, explaining that

> [t]he rationale for th[e] extended coverage is that when travel is an essential part of employment, the risks associated with the necessity of eating, sleeping, and ministering to personal needs away from home are an incident of the employment even though the employee is not actually working at the time of injury.

*Id.* at 696-67. The court further explained that "[t]he rule recognizes that a traveling employee is subject to hazards [he or she] would otherwise have the option of avoiding and that hazards of travel become the hazards of the employment." *Id.* at 697 (quoting *Chavez v. ABF Freight Sys., Inc.*, 27 P.3d 1011, 1014 (N.M. Ct. App. 2001)).

Upon review of the traveling employee doctrine, we adopt the doctrine as set forth in *Roman*. We must liberally construe the phrase "course of employment" to effectuate the humanitarian purpose of the Act. *Gallie*, 859 A.2d at 1291-92. For a traveling employee, the act of travel is essential for carrying out the business of his or her employer. A traveling salesman, for example, cannot carry out the business of his employer without traveling to present products and solicit business. As such, the act of traveling, in and of itself, furthers the business and affairs of a traveling employee's employer. So too do the activities incidental to travel such as lodging, refueling, and stopping for food and drink.

During their travels, traveling employees are subject to the risks associated with travel that stationary employees are not. Therefore, the "hazards of travel become the hazards of [] employment." *Ball-Foster Glass Container Co.*, 177 P.3d at 697 (citation omitted). In light of this, we agree with the Superior Court's conclusion in *Combs* that a traveling employee must have a broader scope of employment than a stationary one. Therefore, to effectuate the humanitarian purpose of the Act, a traveling employee must be considered in the course of his or her course of employment during the entirety of work-related travel unless the employee abandons his or her employment.

We decline to limit application of the traveling employee doctrine to fatal claim cases as Employer suggests. In arguing that the traveling employee doctrine should only apply to fatal claim cases, Employer contends that the presumption afforded by the doctrine conflicts with a claimant's burden in course of employment cases to demonstrate that he or she was in the course of employment at the time of his or her injury. *See*

*O'Rourke*, 125 A.3d at 1189. However, as we have previously explained, "[w]ithin the context of a fatal claim petition, the surviving family member bears the responsibility to substantiate the elements necessary to merit the benefit award." *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prod.)*, 861 A.2d 928, 943 (Pa. 2004). Therefore, if the presumption afforded to traveling employees under the traveling employee doctrine somehow conflicts with the burden prescribed by the Act, the conflict would be equally present in general injury cases as well as fatal claim cases. However, we do not detect a conflict between the presumption and the burden prescribed by the Act. Again, under the Act, the claimant bears the burden of demonstrating that he or she was in the course of employment at the time of his or her injury. *O'Rourke*, 125 A.3d at 1189. To give rise to the presumption, a traveling employee must demonstrate that he or she set out on the business of his or her employer. *Roman*, 616 A.2d at 130. Therefore, the traveling employee doctrine does not eliminate the burden prescribed by the Act, it merely provides a broader scope of employment for traveling employees than stationary employees.

## VI.    Application of the Traveling Employee Doctrine

Having reviewed and adopted the traveling employee doctrine, we turn to the facts of the present appeal to consider the doctrine's applicability in this case. The doctrine, again, provides for the following presumption: "[w]hen a traveling employee is injured after setting out on the business of his [or her] employer, it is presumed that he [or she] was furthering the employer's business at the time of the injury." *Roman,* 616 A.2d at 130. Thus, for the traveling employee doctrine to be implicated, Claimant must demonstrate: (1) that he is a traveling employee and (2) that he set out on the day of the accident on the business of Employer. The WCJ acknowledged that Claimant was a

traveling employee and that Claimant set out on the day of the accident to visit customers in the northern portion of his sales territory. The record supports these findings, and the Employer does not appear to dispute them.

However, the Employer argues the traveling employee doctrine is not implicated in this case and in doing so contends that this case is akin to *Brown*. We disagree. The employees in *Brown* and *Canning*, which were relied on by the WCJ in his decision, were not traveling employees. Therefore, a different framework for determining whether Claimant was in the course of his employment at the time of the motor vehicle accident applies here than was applied in *Brown* and *Canning*, making the present matter more akin to *Investors Diversified Services*, where the claimant was a traveling employee, than either *Brown* or *Canning*.

As Claimant has established the criteria to give rise to the presumption that he was in the course of his employment at the time of the motor vehicle accident, the burden then shifts to Employer to demonstrate that Claimant abandoned his employment prior to the accident. *Roman*, 616 A.2d at 130. Employer can demonstrate this by showing that Claimant's actions, at some point prior to the accident, "were so foreign to and removed from his usual employment that they constitute an abandonment of that employment." *Roman,* 616 A.2d at 130. While Employer contends the traveling employee doctrine is not implicated in this case, Employer argues, in the event this Court finds the doctrine applicable here, Claimant abandoned his employment when he passed the highway exit to his home and proceeded to the Tilted Kilt because "[h]is attendance was not mandatory for his employment" nor was the event "work-related." Employer's Br. at 37-38.

We begin with the fact that Claimant, admittedly, passed the highway exit to his home on the way to the Tilted Kilt. The Commonwealth Court essentially found this fact to be dispositive, concluding that Claimant ceased to be in the course of his employment

at this moment because this is the moment where Claimant's homeward trip ended. *Peters*, 214 A.3d at 743. However, the Commonwealth Court's attention to this fact was far too narrow. An employee's course of employment does not end simply because the employee passed his or her home during the workday. For example, if Claimant had passed his home while traveling from one customer to the next, he surely would not have ceased to be in the course of his employment simply by passing his home.

Claimant contends that he passed the highway exit to his home to attend an Employer-sponsored social event. While the location of Claimant's home is certainly relevant if his attendance of the event at the Tilted Kilt constituted abandonment, it is not dispositive of whether Claimant's course of employment continued through the event. As such, we proceed to consider whether his attendance at the event constituted abandonment of employment.

We agree with Judge Cohn Jubelirer's dissenting opinion that Claimant did not abandon his employment by attending the event at the Tilted Kilt. Claimant, who the WCJ found credible in part, and Michael Cintron, who the WCJ found credible, both testified that these types of events were regularly held during sales blitzes. WCJ's Decision, FOF ¶¶ 5, 7. Therefore, it would be difficult for us to conclude that Claimant's action in attending a regularly held type of event constituted an act so foreign to and removed from his regular employment to be considered abandonment of employment.

We acknowledge the WCJ found the event at the Tilted Kilt to be voluntary and social in nature. *Id.* ¶ 10. However, those facts, do not mean the event was not work-related. The record reflects that Employer hosted and sponsored the event. While work may not have been discussed at the event, the event still benefited Employer by fostering relationships and improving morale. *See Investors Diversified Servs.*, 520 A.2d at 960. The record reflects this to be true. Theodore Smith described the event as a chance for

the sales representatives to relax after the sales blitz. WCJ's Decision, FOF ¶ 6. Michael Cintron indicated during his testimony that these types of events were a perk for sales representatives. *Id.* ¶ 7. Therefore, we cannot conclude that Claimant abandoned his employment by attending the event. This, however, does not end our analysis as there remains a question as to whether Claimant abandoned his employment sometime between leaving the event at the Tilted Kilt and the occurrence of the motor vehicle accident.

The record reflects conflicting testimony as to where Claimant was coming from at the time of the motor vehicle accident. Claimant testified that he was traveling from the Tilted Kilt to his home at the time of the motor vehicle accident. *Id.* ¶ 5. Michael Cintron, on the other hand, testified that in his phone conversation with Claimant following the motor vehicle accident, Claimant stated that he was on his way home from some other event than the one at the Tilted Kilt at the time of the accident. *Id.* ¶ 7. That being said, Michael Cintron candidly testified that he could not recall where Claimant said he was coming from. *Id.*[6] The WCJ did not explicitly resolve this conflicting testimony,

---

[6] During his testimony regarding the phone conversation with Claimant following the accident, Michael Cintron had the following exchange with Employer's counsel during direct examination:

> Q. Did [Claimant] tell you what he was doing at the time [of the accident]?
>
> A. I can't recall specifically. I do know the first question I asked him was, are you okay, of course, and about his well[-]being. We went over what he needed to do as far as police, calling the police, getting pictures and accident reports. He did state that he was on his way from an event. I'm not sure if it was --- had to do with his daughters. I don't know exactly what it was because I know that his children were in after school events. But it definitely was not on his way from the Titled Kilt from what he told me.

April 1, 2016 Hearing Transcript, Reproduced Record at 128a. Michael Cintron was asked again on cross-examination where Claimant stated he was coming from at the time of the motor vehicle accident, to which Michael Cintron testified that he could not "remember or recall." *Id.* at 128a-29a.

presumably because the WCJ determined that Claimant abandoned his employment with Employer when he passed the highway exit to his home and proceeded to the Tilted Kilt. While the WCJ did credit the testimony of Michael Cintron, this credibility determination does not resolve the conflicting testimony because the WCJ also credited in part the testimony of Claimant without explaining which parts the WCJ deemed credible. *Id.* ¶ 10. This leaves the conflicting testimony of Claimant and Michael Cintron unresolved, and leaves open the question of whether Claimant took some action after leaving the Tilted Kilt that could constitute abandonment of employment.

As "the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight," we find it necessary to remand for the WCJ to resolve the conflicting testimony between Claimant and Michael Cintron with respect to whether Claimant was coming from the Tilted Kilt at the time of the accident or from some other unknown event. *Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.)*, 781 A.2d 1146, 1150 (Pa. 2001). If on remand the WCJ resolves the conflicting testimony in favor of Michael Cintron and credits his testimony, the WCJ will then need to determine whether Claimant's action in attending an unknown event following the event at the Tilted Kilt was "so foreign to and removed from his usual employment that [it] constitute[d] an abandonment" of his employment. *Roman,* 616 A.2d at 130; *see also Maher*, 218 A.2d at 596 (setting forth that under the traveling employee doctrine, a traveling employee's "continuity of employment is not broken unless the employe's activity constitutes an abandonment of employment.").

## VII.   Conclusion

For the abovementioned reasons, we conclude Claimant remained in the course of his employment with Employer through the event at the Tilted Kilt.  However, as there

is conflicting testimony as to whether Claimant took some action after leaving the Tilted Kilt that could be considered abandonment of employment, we vacate the order of the Commonwealth Court affirming the denial of Claimant's claim petition, and remand for the Commonwealth Court to remand to the WCJ with specific instructions to make additional findings and conclusions consistent with this Opinion.

Jurisdiction relinquished.

Chief Justice Baer and Justices Saylor, Todd, Donohue, Dougherty and Wecht join the opinion.